[L. A. No. 27456. In Bank. Nov. 21, 1963.]

FOREST LAWN COMPANY, Plaintiff and Respondent, v. CITY COUNCIL OF THE CITY OF WEST COVINA et al., Defendants and Appellants.

Harry C. Williams, City Attorney, Burke, Williams & Sorensen and Royal M. Sorensen for Defendants and Appellants.

O'Melveny & Myers, Bennett W. Priest and William D. Moore for Plaintiff and Respondent.

TOBRINER, J.—This case involves the validity of proceedings of the City Council of West Covina pursuant to the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, § 35300 et seq.). We hold that in determining whether the "owners of one-half of the value of the territory proposed to be annexed" have protested the annexation, the above statute requires an apportionment of the value of a single piece of land, part of which lies inside, and part outside, of the area of annexation. We hold also that the county assessor, rather than the city council, should determine such apportionment. Finally, we do not believe certain minor technical points urged by plaintiff are meritorious.

On December 29, 1960, the City Council of West Covina, by Resolution 1997, began proceedings under the Annexation of Uninhabited Territory Act of 1939 to annex 114 acres of uninhabited land contiguous to the city's boundaries. The city council did not submit the description of the proposed annexation to the Boundary Commission of Los Angeles County until December 30, 1960; the commission issued its report on January 18, 1961. Pursuant to Government Code section 35313 the city council held a hearing to determine protests to the proposed annexation. On February 14, 1961, the council adopted a second resolution (No. 2034) substantially the same as Resolution 1997, referring to the same land. On April 10, 1961, it held a protest hearing pursuant to Resolution 2034.

The 114 acres of uninhabited territory to be annexed consisted of five separate parcels, four of which were residential lots owned by persons other than plaintiff; these four lots comprised 14 of the 114 acres. The remaining 100 acres composed a part of an undivided 1,050-acre parcel owned by plaintiff. According to the last equalized assessment roll, the

total assessed value of the four residential parcels was $48,360. The assessed value of plaintiff's entire 1,050 acres totalled $138,010, including $3,010 assessed value for improvements located on the 100-acre portion to be annexed. The assessment roll did not show a separate assessed value for the 100-acre portion of the 1,050-acre parcel.

Prior to the hearings plaintiff filed a written protest against the proposed annexation; the other owners did not protest. At the protest hearings the city council determined that owners of one-half of the value of the territory to be annexed had not protested the annexation. In so doing the council postulated that it had the power, under Government Code section 35313, to apportion the assessed value of the 1,050-acre parcel between the portion of the parcel included in the proposed annexation and the portion excluded.

Plaintiff sought mandamus in the superior court. The court held that the city council exceeded its statutory power in apportioning the assessed valuation of the 1,050-acre parcel. The court thereupon issued a writ of mandate ordering the city to determine that owners of one-half of the value of the territory to be annexed had protested the annexation and that the proceedings be terminated. Defendants appeal from the judgment.

■■■ We turn first to the issue of whether section 35313[1] requires apportionment of the assessed value of plaintiff's 1,050-acre parcel between the portion included and the portion excluded from the annexation area.

Section 35313 must be construed in view of both its imme-

---

[1] Section 35313 in relevant part provides as follows: "At the time set for hearing protests ... the legislative body [city council] shall hear and pass upon all protests so made:

"(a) If privately owned property and no publicly owned property is proposed to be annexed, further proceedings shall not be taken if protest is made by private owners of one-half of the value of the territory proposed to be annexed. The value given such property for protest purposes shall be that shown on the last equalized assessment roll if the property is not exempt from taxation. If the property is exempt from taxation, its value for protest purposes shall be determined by the county assessor in the same amount as he would assess on such property if it were not exempt from taxation. . . .

"(c) As used in this article, 'value of the territory' means the value of land and improvements thereon.

"(d) The value for protest purposes to be given property held in joint tenancy or tenancy in common shall be determined by the legislative body in proportion to the proportionate interest of the protestant in such property. . . ."

diate purpose and the underlying design of the Annexation of Uninhabited Territory Act of 1939. ■ The act seeks to facilitate the continued development of California's cities and to permit the extension of the needed and beneficial services of municipalities to the citizens of the state. (Annexation and Related Incorporation Problems in the State of California, 6 Assembly Interim Committee Reports No. 16, p. 32 (1961), hereinafter referred to as Annexation and Related Incorporation Problems; see also *People* v. *City of Los Angeles* (1908) 154 Cal. 220 [97 P. 311]; *People* v. *City of Palm Springs* (1958) 51 Cal.2d 38 [331 P.2d 4].)

■ In section 35313 the Legislature prescribed a procedure by which owners of property subject to annexation may express their desires respecting it. Those who object to the annexation may protest and thus in effect vote against it. Those who favor it may remain silent, thereby voting for it. If owners of one-half of the value of the land proposed to be annexed protest the annexation, the proceedings must terminate. The weight to be given each owner's vote is measured by reference to the assessed value of his land, as shown by the last equalized assessment roll. Section 35313 provides that the measure of the interests of private property owners shall be "the value of the territory proposed to be annexed."

We believe that it would distort the essentially democratic process incorporated in section 35313, and it would be manifestly inequitable, to measure the weight to be given plaintiff's vote by including 950 acres of land not within the annexation area. To do so is to run roughshod over the rights of nonprotestants. (See *People* v. *City of Palm Springs, supra,* 51 Cal.2d 38.) The converse of the present situation reveals the potential injustice of plaintiff's interpretation: if the city council were to annex the four separate residential parcels and a small parcel of plaintiff's land (for example, 10 square feet) and the four owners were to protest, but plaintiff not to do so, the objection of the four individual owners would be futile.

Application of appropriate rules of statutory construction leads to a result consonant with the above-described statutory policy. The statutory requirement of apportionment may be implied from the powers expressly granted in section 35313. As the court in *Manteca Union High School Dist.* v. *City of Stockton* (1961) 197 Cal.App.2d 750, 755 [17 Cal.Rptr. 559], dealing with another aspect of the annexation laws, stated, " 'where power is given to perform an act, the authority to

employ all necessary means to accomplish the end is always one of the implications of the law.'" Likewise, the early decision of *People* v. *City of Los Angeles, supra,* 154 Cal. 220, supports this position in holding that a city is empowered to cut across property and assessment lines in an annexation proceeding. The power to include one part and exclude another part of one owner's land in an annexation proceeding implies as its corollary the requirement that the assessed value of the entire land be apportioned between the two parts.

The recent case of *People* v. *City of Santa Barbara* (1961) 192 Cal.App.2d 342 [13 Cal.Rptr. 423], recognized at least *sub silentio* such a requirement. There the city sought to annex certain uninhabited territory, a portion of which was owned by a public utility company. The property of the utility company so to be annexed formed part of a larger holding of the company. On the last equalized assessment roll the utility company's entire holding was assessed at $2,950,000. The court determined, after the parties stipulated to the amount, that the sum of $782,930 represented the portion of the assessed value allocable to the utility company's property within the annexation area. Thus the court recognized that the power of the city to annex a portion of a larger parcel carried with it the complementary requirement of apportionment.

Turning to plaintiff's opposing arguments, we do not believe that its reliance upon the literal construction of the statute, the legislative history of the section, and previous decisions suffice to meet the above considerations.

Referring to the provision of section 35313 which states that "[t]he value given such property [sought to be annexed] for protest purposes shall be that shown on the last equalized assessment roll...," plaintiff argues that the city must accept such assessed value of the entire parcel because it is the only value shown on the roll. ▮ Although plaintiff's reading of section 35313 is technically possible, the court's statement in *People* v. *City of San Bruno* (1954) 124 Cal.App.2d 790, 794 [269 P.2d 211], applies here: "The courts should not so technically construe such statutes as to compel absolute and literal compliance with every word contained therein, because to do so, in many cases, would result in defeating the will of the majority. ..." (See also *Manteca Union High School Dist.* v. *City of Stockton, supra,* 197 Cal. App.2d 750; *Jefferson Union School Dist.* v. *City Council of*

*the City of Sunnyvale* (1954) 129 Cal.App.2d 264 [277 P.2d 104].)

We cannot accept plaintiff's further assertion that the legislative history shows that the value of the property to be annexed must be determined exclusively from the assessment rolls. Plaintiff contends that the Legislature in drafting some six[2] amendments to the section since 1949 deliberately refrained from requiring that private property be apportioned for protest purposes. Yet the legislative history discloses no such intent. In truth, the Legislature has not been able to keep pace with the growing complexity and frequency of annexation problems; the Attorney General correctly stated to the Interim Committee on Municipal and County Government: "Like many statutes, the annexation laws for many years have been amended to solve particular problems but with little consideration for the overall statute or other problems. ..." (Annexation and Related Incorporation Problems, p. 61.) Thus the Legislature obviously did not foresee the particular problem now presented; surely legislative silence should not be amplified into an implied negation of a requirement of apportionment that is necessary to the effective application of the statute.

Nor are the decisions cited by plaintiff, including *American Distilling Co.* v. *City Council of the City of Sausalito* (1950) 34 Cal.2d 660 [212 P.2d 704, 18 A.L.R.2d 1247], dispositive of this case. In *American Distilling* the territory to be annexed included privately as well as publicly owned land. Ignoring the provision of section 35313 which requires that protests should be determined according to the "value of the territory proposed to be annexed according to the last equalized assessment roll" the city independently assessed the public land, placing a value upon it in excess of the value of the land of protesting private owners. We held that only property shown on the last equalized assessment roll should be considered in determining whether a sufficient protest had been made. The statute, as it was then drafted, evinced a clear intent to *exclude* from consideration all publicly owned land. The Legislature adopted the assessment roll as the sole measure of protest in order to prevent the harsh results accruing from the prior language, which had permitted the

[2]There were more than 250 amendments to the annexation sections of the Government Code between 1949 and 1959. See Annexation and Related Incorporation Problems, p. 61.

rights of private owners to be circumvented by the inclusion of publicly owned property within the proposed annexation. (30 Ops. Cal. Atty. Gen. 1-6 (1957).)[3] *American Distilling* thus effectuated the legislative purpose in a situation entirely different than the instant one.

Plaintiff's reliance upon *Heller* v. *City of Seal Beach* (1958) 157 Cal.App.2d 441 [321 P.2d 97], is equally unavailing. The facts of *Heller* substantially duplicate those in *American Distilling*, except that section 35313 by this time had been amended to provide alternative measures of the sufficiency of protests, one alternative permitting the city council to consider only private land, the other allowing it to consider both private and public land. The court in *Heller* properly held that the first alternative excluded from consideration publicly owned land. The rationale of the decision was, as in *American Distilling*, the effectuation of the statutory intent to preclude the city council from vitiating the vote of private property owners by inclusion of nonprotesting publicly owned land in the proposed annexation. (See 30 Ops. Cal. Atty. Gen. 1-6 (1957).)[4]

 In summary, the statutory policy of section 35313 and the act as a whole can be effectuated only by application of the requirement of apportionment contained in section 35313. In the absence of such apportionment section 35313 could produce the unfair result manifested in this case and the equally inequitable result hypothesized above: a nonprotestant holding a large contiguous piece of property outside the annexation area could, by refusing to protest, override

---

[3]The Attorney General sets forth at length the legislative and judicial history leading to the *American Distilling* case.

[4]*People* v. *City of Santa Barbara* (1961) 192 Cal.App.2d 342 [13 Cal.Rptr. 423], also cited by plaintiff, is distinguishable. In this case the city refused to consider the protest of a privately owned utility company on the ground that the utility company's property was not ''land'' or ''territory'' within the terms of section 35313. The property consisted of underground mineral rights which, on the applicable assessment roll, showed a value in excess of one-half of the privately owned land to be annexed. The court held that the city acted improperly in refusing to consider the utility company's property for protest purposes. The decision clearly does not support the plaintiff's position in the present case. In *Santa Barbara* the city council attempted to ignore or circumvent the assessment roll. In the present case the city council acted within the framework of the assessment roll. In any event, as we shall point out, the county assessor will apportion the assessed value of the plaintiff's land in accordance with the established methods of his office and pursuant to the procedure prescribed by section 35313. (See fn. 6, *infra*.)

the interests of those persons holding substantially all of the land actually within the proposed area of annexation. The alternative procedure of refusing to afford any consideration whatever to the desires of landowners whose property lies only partially within the annexation area offers an unacceptable solution, completely negating the interests of such persons, including, indeed, the present plaintiff. Nor does plaintiff's literal reading of section 35313 or its misplaced reliance on legislative history and previous decisions override the considerations which support a holding that section 35313 requires apportionment.

We have concluded, as we stated, *supra,* that the function of apportionment should be performed by the county assessor rather than by the city council. As we shall explain, that holding finds support in the advantage of reposing the authority to fix values in a disinterested party, the legislative history, and the desirability of an expert's evaluation.

The city council is a party vitally interested in the successful effectuation of the annexation. Although recourse to the courts would lie to prevent arbitrary or abusive action of the city council, litigation is not a panacea for the evils of bureaucratic improprieties. The Attorney General has described the dangers which inhere in the city council's anomalous position in the annexation proceedings: "In our opinion the most serious defect in the present annexation statutes is in the fact that the entity conducting the procedure and making the crucial determination as judge, fact finder, and administrator is a party in most instances desirous of completing an annexation—the city council of the city to which the territory is to be added. ... While most annexations go smoothly and most cities are fair, there have been an inordinate number of annexations where the cities have been prone to decide all doubts in their own favor. ..." (Annexation and Related Incorporation Problems, p. 54.) The assignment of the task of apportionment to the assessor, a body not directly interested in the annexation, avoids such difficulties.

Although we have recognized that we cannot easily ascertain the legislative intent underlying the amendatory history of section 35313, we can discern in the amendments a pattern of restraint towards vesting in the city council the power to evaluate land within a proposed annexation area. A 1955 amendment to section 35313 provided that the city council ascertain the value of publicly-owned property for protest

purposes. In 1957 section 35313.1 empowered the State Lands Commission to determine the value of tide or submerged lands for protest purposes. In 1961 the Legislature amended section 35313 nullifying the city council's authority to fix the value of publicly-owned land and vesting such authority, as well as the power to evaluate tax-exempt land, in the county assessor.[5] This record suggests a legislative determination that agencies other than the city council may more appropriately perform the function of evaluating land for protest purposes.

The very nature of the work performed by the assessor qualifies him as an agency more adept than the council for the task of apportionment. He is more experienced, of course, in the use of the equalized assessment roll as a means of establishing the value of property for annexation purposes. Indeed, he has in the instant case previously fixed an overall valuation.

Section 35313 itself suggests the procedure for the implementation of the approach which we have set forth. In regard to the evaluation of tax-exempt and publicly owned land, the section provides: "Determination of value of publicly owned property, or privately owned property exempt from taxation by the county assessor for protest purposes shall be obtained from the assessor by the protestant and submitted to the legislative body [city council] with the written protest."[6] We adopt this procedure for application in the instant case.

Finally, we find no merit in two minor technical issues raised by plaintiff.

 Plaintiff contends that the city cannot initiate an annexation proceeding prior to the filing of a proposal for annexation with the county boundary commission because Government Code section 35002 provides that the city shall not initiate annexation proceedings until such a proposal has

---

[5]The 1961 amendment, which provides that the city council should apportion land held in joint tenancy or tenancy in common, does not affect our interpretation of the legislative history. Such power to apportion is subject to limitations not present in the case of land held by a single owner since the apportionment of land held in cotenancy is to be made according to an easily ascertainable standard: ownership interests.

[6]Section 35313 also provides that the value for protest purposes of tax-exempt and publicly owned land "shall be determined by the county assessor in the same amount as he would assess on such property if it were not exempt from taxation."

been filed. The trial court correctly disposed of this issue on the authority of *Jefferson Union School Dist.* v. *City Council of the City of Sunnyvale* (1954) 129 Cal.App.2d 264 [277 P.2d 104], which held that the provisions of section 35002 were directory and not mandatory.

Plaintiff asserts that the annexation pursuant to the second resolution (No. 2034) failed because the city adopted that resolution while proceedings under the prior resolution (No. 1997) were still pending. The trial court likewise correctly disposed of this issue by its finding that the council had impliedly abandoned Resolution 1997.

The judgment of the trial court ordering that a writ of mandate issue to compel the City Council of West Covina to determine that protest had been made by owners of one-half of the value of the territory to be annexed and to terminate the proceedings is reversed, and the matter is remanded to the superior court with directions that it issue a writ of mandate in conformance with the opinion herein. Each party shall bear its own costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.