[Civ. No. 28814.   Second Dist., Div. One.   June 11, 1965.]

WILBUR OLSON et al., Plaintiffs and Appellants, v. CITY OF HAWTHORNE, Defendant and Respondent.

52

Graham A. Ritchie for Plaintiffs and Appellants.

A. B. Keel, City Attorney, for Defendant and Respondent.

LILLIE, J.—Plaintiffs, owners of real property located in the territory described as the ''Lisso Annexation,'' sued the City of Hawthorne to annul its proceedings to annex the territory and to prevent it from taking further action therein. After trial, the court denied the peremptory writ of mandate and entered judgment for defendant; plaintiffs appeal therefrom.

The record on appeal consists of a clerk's transcript and copies of certain exhibits; it does not include the reporter's transcript of the oral proceedings at the trial. Thus, we treat the instant appeal as one on the judgment roll, and only those facts appearing in the trial court's findings will be considered. (*Estate of Larson,* 92 Cal.App.2d 267, 269 [206 P.2d 852].) Plaintiffs cannot broaden the scope of appellate inquiry by incorporating in the clerk's transcript the documentary evidence received in the court below. (*White* v. *Jones,* 136 Cal. App.2d 567, 569 [288 P.2d 913].)

On August 26, 1963, pursuant to resolution and the provisions of the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, § 35300 et seq.), defendant city initiated proceedings to annex certain territory known as the Lisso Annexation. On that date there were only 11 persons residing within the territory of the proposed annexation who were registered to vote and who had been registered to vote for 54 days immediately and continuously preceding August 26,

1963. Prior to July 17, 1963, 51 registered voters residing within the territory acting "freely and voluntarily of their own volition and accord and with full knowledge of the effect of their act and with full and free intent so to do, and . . . [without] any fraud, coercion, menace and undue influence, force, fear, or unreasonable persuasion of any person whomsoever," voluntarily requested the registrar of voters to cancel their voting registrations. (Findings of fact, XVIII.) Acting pursuant to these requests, and in a manner approved by the provisions of the Elections Code, the registrar of voters canceled the voting registrations of 48 of said voters on July 17, 1963, and of the other 3 sometime after May 27, 1963, but before August 26, 1963. As relates to the main issue herein, the trial court concluded that the territory of the Lisso Annexation was uninhabited as the term "uninhabited" is used in section 35303, Government Code.

The wisdom or expediency of annexation of a particular area is a political, not a judicial, matter. Courts will interfere only where existing laws are not complied with. The motives of the city are not subject to judicial inquiry if the city council proceeded according to established law. (*People ex rel. Russell* v. *Town of Loyalton,* 147 Cal. 774 [82 P. 620]; *People ex rel. Peck* v. *City of Los Angeles,* 154 Cal. 220 [97 P. 311]; *City of Burlingame* v. *County of San Mateo,* 90 Cal. App.2d 705, 711 [203 P.2d 807]; *People ex rel. Forde* v. *Town of Corte Madera,* 115 Cal.App.2d 32, 45, 47 [251 P.2d 988]; *Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447, 457 [283 P.2d 57].) However, invoking the principle "that the courts will interfere with an annexation proceeding that amounts to a fraudulent abuse of the powers conferred by the statute" (*Manteca Union High School Dist.* v. *City of Stockton,* 197 Cal.App.2d 750, 754 [17 Cal.Rptr. 559]; *People ex rel. Averna* v. *City of Palm Springs,* 51 Cal.2d 38 [331 P.2d 4]; *City of Anaheim* v. *City of Fullerton,* 102 Cal.App.2d 395 [277 P.2d 494]; *People ex rel. City of Pasadena* v. *City of Monterey Park,* 40 Cal.App. 715 [181 P. 825]; *People ex rel. Forde* v. *Town of Corte Madera,* 115 Cal.App.2d 32 [251 P.2d 988]), appellants claim that the "device of canceling voters registrations by 51 residents was a fraud" (A.O.B. pp. 5, 8) which renders the annexation proceedings null and void.

While it is true, and the trial court so found, that the cancellation of registrations of the 51 persons was "part of a plan to make it possible to annex the said Lisso Annexation territory, as uninhabited territory" (findings of fact,

III), it further found that there was no fraud in any stage of the proceedings in connection with the proposed annexation (XX), and that the 51 registered voters in the territory freely and voluntarily, and with full knowledge of the effect of their act and with full and free intent so to do, and not acting under fraud, coercion, or undue influence (XVIII), voluntarily canceled their registration certificates in accord with the provisions of the Elections Code (XVI). ▮ Inasmuch as this is a judgment roll appeal, all intendments will be made in support of the judgment (*Utz* v. *Aureguy*, 109 Cal.App.2d 803, 806 [241 P.2d 639]) ; thus the issue of fraud, tried and determined in the court below, is no longer open to inquiry. ▮ In the absence of a reporter's transcript the finding of fact that there was no fraud in any stage of the annexation proceeding is presumed to be supported by sufficient evidence. Nor, in the light of pertinent provisions of the Elections Code and the obvious purpose of the Annexation of Uninhabited Territory Act of 1939, can we conclude that it was fraudulent as a matter of law for the 51 registered voters to voluntarily cancel their voting registrations for the purpose of making the area in which they live eligible for annexation as an "uninhabited territory."

Section 382, Elections Code, provides that "The registration of a voter is permanent . . . unless and until the affidavit of registration is canceled by the county clerk for any of the causes specified in this article"; and under section 383, "The county clerk shall cancel the registration in the following cases : (a) At the request of the person registered. . . ." Under these sections the privilege of canceling his voting registration may be exercised by a registered voter without stating his reason therefor in the authorized request for cancellation. Any reason appears to be immaterial, and when the affidavit of registration is canceled by the county clerk at the voter's request he simply ceases to be a registered voter. Thus, the 51 persons who prior thereto had canceled their voting registration were not registered voters on August 26, 1963.

The system devised by the Legislature for annexation draws a distinction between inhabited and uninhabited territory. The character of territory as uninhabited for the purpose of annexation is fixed by section 35303, Government Code (Annexation of Uninhabited Territory Act of 1939). The Legislature selected an arbitrary and mathematical division of 12 residing registered voters as the means of distinguishing between inhabited and uninhabited territory. Thus, if there are

less than 12 registered voters residing in the territory proposed to be annexed on the day of the institution of annexation proceedings who have been registered for not less than 54 days, the territory is deemed to be uninhabited, and the annexing city is bound to proceed under the Act of 1939. (§ 35303.) The major difference between annexation of inhabited and uninhabited territory is that if it is inhabited the annexation must ultimately be approved by a majority of the voters residing in the area. (§ 35112.) By setting up different procedures for the annexation of inhabited and uninhabited territory, the Legislature created a situation which invites proponents of an annexation to plan their proceeding in such a manner as to use that procedure which will more likely work to their benefit. (11 U.C.L.A. L.Rev. 41, 44 [*A Study of Recent Amendments to California Annexation Laws* by Ronald E. Gother].) Thus, the expense and time involved in an election can be eliminated by annexation proponents by the act of canceling their voting registrations; this makes available to them a less expensive, more efficient annexation procedure. Cancellation of voting registrations for the purpose of taking advantage of the provisions of the Act of 1939, far from being fraudulent, appears to be reasonable, practical, and necessary to "facilitate the continued development of California's cities and to permit the extension of the needed and beneficial services of municipalities to the citizens of the state. (Annexation and Related Incorporation Problems in the State of California, 6 Assembly Interim Committee Reports No. 16, p. 32 (1961), hereinafter referred to as Annexation and Related Incorporation Problems; see also *People* ex rel. *Peck* v. *City of Los Angeles* (1908) 154 Cal. 220 [97 P. 311]; *People* ex rel. *Averna* v. *City of Palm Springs* (1958) 51 Cal.2d 38 [331 P.2d 4].)" (*Forest Lawn Co.* v. *City Council,* 60 Cal.2d 516, 519 [35 Cal.Rptr. 65, 386 P.2d 665].)

█ We conclude that a voluntary exercise by registered voters of the privilege of canceling their voting registrations in accord with the provisions of the Elections Code for the purpose of permitting the territory in which they reside to be annexed as "uninhabited" territory does not constitute the "fraudulent abuse of the powers conferred by the statute" which warrants judicial interference. The facts herein do not present a situation which is controlled by *City of Anaheim* v. *City of Fullerton,* 102 Cal.App.2d 395 [227 P.2d 494], and other authorities cited by appellants.

█ The main issue relates to the construction of section

35303, Government Code (Annexation of Uninhabited Territory Act of 1939). Section 35303, as amended in 1961, provides: "For purposes of this article territory shall be deemed uninhabited if less than 12 persons who have been registered to vote within the territory for at least 54 days reside within the territory at the time of the filing of the petition for annexation or the institution of proceedings on motion of the city legislative body." (Annexation of Uninhabited Territory Act of 1939.)

It is undisputed that the Lisso Annexation proceedings were initiated by defendant city on August 26, 1963, by city council resolution No. 35369; that on August 26, 1963, there were less than 12 persons (11) residing in the annexation territory who had been registered to vote within the territory for at least 54 days and were registered to vote on that day; and that 51 other persons living in the territory on August 26, 1963, while at one time registered to vote in the territory for at least 54 days, were not registered to vote in the territory on that date.

Appellants claim that section 35303, Government Code, must be construed to mean that the territory shall be deemed uninhabited for annexation purposes only if there are less than 12 persons residing therein on the day annexation proceedings are initiated who had previously been registered to vote for 54 days, no matter when, regardless of whether they are registered to vote on the day proceedings were commenced. They submit that the 51 persons who canceled their registration prior to August 26, 1963 (the date annexation proceedings were initiated), were at one time registered to vote in the territory for at least 54 days, although not so on August 26, 1963, and that they resided within the territory on August 26, 1963; and that these 51 residents, together with the 11 who were still registered voters on August 26, 1963, failed to constitute the territory as "uninhabited."

Reason dictates that section 35303 be construed to mean that the territory proposed to be annexed shall be deemed "uninhabited" within the meaning of the statute for the purpose of selecting the appropriate act under which the proceedings must be initiated, if there are less than 12 persons residing within the territory on the date annexation proceedings are initiated who are registered to vote on that day and who have been registered to vote for at least 54 days immediately prior thereto.

In 1956 the court in *People* ex rel. *Pennington* v. *City of Richmond,* 141 Cal.App.2d 107 [296 P.2d 351], construed

section 35303 as it read prior to 1961.[1] The City of Richmond appealed from a judgment that the purported annexation of certain territory under the Annexation of Uninhabited Territory Act of 1939 was null and void; it was based on the finding that 18 registered voters resided in the territory at the time the petition for annexation was filed rendering the territory unavailable for annexation as uninhabited territory. Defendant city claimed that there were only 11 resident registered voters in the territory. In determining the number of registered voters residing in a proposed annexation area the court held that only those voters both registered in that area and residing therein at the time of the filing of the annexation petition may be counted, and that one registered to vote elsewhere but residing in the territory may not be counted. It said at pages 115-116 : ''The Wimberleys, as we have indicated, are not in the same category as the Campbells and the Aguiars. They moved from Richmond into the annexation territory about three weeks before the filing of the annexation petition but did not transfer their registration from their former residence to the new until 15 or 16 days after the filing. Literally, they were 'registered voters' (registered as residents of Richmond) and they did 'reside within' the territory (see § 35303) but we deem that not enough. We see no escape from the conclusion that the statute requires one to be registered as of the place where he resides on the crucial day, the day of the filing of the petition. (Probably, also, he should be entitled to vote if an election were held in that area on that date.) To recognize registration in any other precinct would sanction registration in any county in the state and introduce an element of great uncertainty into the administration of the statute.''

Discussing *People* ex rel. *Pennington* v. *City of Richmond, supra,* in Opinion No. 56-212 (June 18, 1957) denying leave to sue in quo warranto to test the validity of two uninhabited annexations to the City of Eureka, the Attorney General, 29 Ops. Cal. Atty. Gen. 204, stated at pages 207-208: ''. . . the court in the *Pennington* case indicated parenthetically that a registered voter to be counted under Government Code section 35303 probably 'should be entitled to vote if an election were held in that area on that date.' The rationale for this conclusion is to be found in the necessity of certainty on the date in

---

[1] ''For purposes of this article territory shall be deemed uninhabited if less than twelve registered voters reside within it at the time of the filing of the petition for annexation or the institution of proceedings on motion of the city legislative body.''

question in order that the legislative body of a city be able to determine that the annexation may properly proceed pursuant to the uninhabited act. Uncertainty would arise if persons who register up to or on the key day are counted to determine whether an area is uninhabited. On the day of initiation the persons who register that day or the next preceding few days do not yet show on the register of voters, and the city is unable to decide for a period of time whether the uninhabited act can be used. Election Code section 122 provides that a person may not vote for a period of 53 days after registration in order that there may be certainty as to who may vote. That certainty appears to be equally necessary for determining who are registered voters for purposes of Government Code section 35303.''

As pointed out by respondent, the need for certainty on the day annexation proceedings are instituted in order that the city council may be able to determine whether the annexation may proceed pursuant to the provisions of the Annexation of Uninhabited Territory Act of 1939, is just as compelling now, after the 1961 amendment, as it was before and requires the same conclusion and interpretation. The 1961 amendment was an effort on the part of the Legislature ''to combat the practices of moving people onto the land or registering them to vote just prior to the time that the annexation proceedings were initiated.'' (See 11 U.C.L.A. L.Rev. 41, 45.) It did not change the time for determining the number of registered voters from the date of institution of annexation proceedings to some indeterminate date prior thereto as urged by appellants. Such a construction would result in the imposition of a burden on the legislative body of a city in any proposed annexation to determine with respect to the territory not only the number of registered voters residing therein on a current date certain, but also whether there had ever been at any time in the past as many as 12 or more people residing in the territory at the same time who had been registered to vote for at least 54 days—an almost impossible task. Moreover, it would permanently fix the status of a territory as inhabited at any time the number of registered voters who had been registered for at least 54 days reached 12 in number, even if all 12 later ceased to be registered for any reason.

We conclude, therefore, under section 35303, Government Code, that if there are less than 12 registered voters residing in a territory proposed to be annexed to the date annexation proceedings are instituted, who have been registered for not less than 54 days immediately prior thereto, then the territory is

deemed "uninhabited," and the city is bound to proceed under the Annexation of Uninhabited Territory Act of 1939. Accordingly, defendant city determined that there were 11 such persons residing in the Lisso Annexation territory and properly proceeded under the 1939 Act.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.