[L.A. No. 30099. In Bank. Sept. 4, 1973.]

NELSON E. WEBER et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF THOUSAND OAKS et al.,
Defendants and Respondents;
LARRY SADE, Intervener and Respondent.

952

**COUNSEL**

Christen Brun Henrichsen for Plaintiffs and Appellants.

Raymond C. Clayton, City Attorney, Burke, Williams & Sorensen and Royal M. Sorensen for Defendants and Respondents.

John D. Maharg, County Counsel (Los Angeles), David A. Mix and Douglas V. Hart, Deputy County Counsel, Daniel J. Curtin, Jr., City Attorney (Walnut Creek), Kenneth C. Scheidig, Assistant City Attorney, Holden & Bevins and Ronald H. Bevins as Amici Curiae on behalf of Defendants and Respondents.

No appearance for Intervener and Respondent.

**OPINION**

**WRIGHT, C. J.**—Plaintiffs appeal from the denial of a petition for a writ of mandate to compel defendants city council and city clerk to terminate proceedings for annexing approximately 24.7 acres of land to the City of Thousand Oaks under the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326, hereinafter referred to as the 1939 act.)[1]

Plaintiffs, husband and wife, own and reside on a parcel of approximately 4.7 acres within the territory sought to be annexed and as such residents had been registered to vote for more than 54 days before commencement of the annexation proceedings. The remainder of the parcel is uninhabited and is owned by Larry Sade, a building contractor, who initiated the annexation proceedings to obtain municipal services necessary for developing his property.

Territory contiguous to a city is deemed uninhabited for purposes of annexation under the 1939 act "if less than 12 persons who have been registered to vote within the territory for at least 54 days reside within the

[1]All statutory references hereinafter are to sections of the Government Code unless otherwise indicated.

territory at the time of the" commencement of annexation proceedings. (§ 35303.) Such an "uninhabited" annexation proceeding does not require the holding of an election or the obtaining of consent from the residents of the annexed territory, but the proceeding is subject to termination upon written protest by the owners of land and improvements having a value constituting at least one-half the total value of the land in and improvements on the territory proposed to be annexed. (§ 35313, subds. (a), (c).) The assessed value of plaintiffs' property was less than one-half of the total assessed value of the land in and improvements on the territory at the time of the annexation hearing before the defendant city council, and the proposal was approved by the city council notwithstanding plaintiffs' oral and written protests. In accordance with the 1939 act, no election was held.

Subject to special exceptions for territory that is publicly owned, located within another city, or "enclosed" by the annexing city,[2] territory containing 12 or more resident voters, registered for at least 54 days, can only be annexed under the Annexation Act of 1913. (§§ 35100-35158, hereinafter referred to as the 1913 act.) Annexation under the 1913 act requires a special election of registered voters residing in the territory proposed to be annexed at which a majority of the votes cast must be in favor of annexation. (§§ 35122-35135.)[3] However, the proceedings must be terminated without the holding of an election if a written protest is made by the owners of land having a value constituting one-half the value of all the land of the territory, exclusive of improvements. (§§ 35120-35121.1.)

 Plaintiffs' basic contention is that the inclusion of their property in the territory proposed to be annexed without giving the residents within that territory an opportunity to vote on the issue violated their rights under the due process and equal protection clauses of the Fourteenth Amendment to the federal Constitution.[4] They contend that because residents of *inhabited* territory are entitled to vote on annexation to a city under the 1913 act, the state is constitutionally required to grant a similar right to vote on annexation to residents of territory that is deemed *uninhabited* because it

---

[2]Special provisions govern annexations of territory of an adjacent city (§§ 35250-35280), territory enclosed by the annexing city (§§ 35400-35423), county highways (§§ 35450-35458), territory owned by the federal government (§§ 35470-35471), and uninhabited territory owned by the annexing city or an overlapping school district (§§ 35200-35213).

[3]If the value of the land in the territory proposed to be annexed is at least one-half the value of the land in the city, or if the number of registered voters in the territory equals or exceeds one-half the number of registered voters in the city, the annexation must also be approved by a majority voting at a special election held for registered voters within the city. (§§ 35121, subd. (d), 35122, 35133-35135.)

[4]Although plaintiffs' briefs do not cite the California Constitution, we have considered their claims also under the provisions of that Constitution guaranteeing due process of law (art. I, § 13) and equal protection of the laws (art. I, §§ 11, 21).

contains fewer than 12 registered voters. For reasons discussed below we reject plaintiffs' contention and hold that differences in the nature and surrounding circumstances of the two proceedings are sufficient to render such constitutional objections inapplicable.

A history of the annexation proceeding leading to the present litigation illustrates the practical context within which the 1939 act is intended to operate. A proceeding to annex "uninhabited" territory under the 1939 act may be commenced either by a written petition of the owners of at least one-fourth of the area and one-fourth of the assessed land value of the territory to be annexed (§ 35305) or by resolution of the city's legislative body (§ 35310). However, no annexation proceeding may be commenced without the prior approval of the local agency formation commission (LAFCO) of the county in which the city is located. (§§ 35002, 54773-54799.2.)

The first preparatory move shown by the record is evidenced by a letter dated September 25, 1970, from the proposed developer, Sade, to the defendant city council requesting annexation of a parcel of land owned by him containing approximately 9.9 acres. In response, the city planning department asked the Ventura County Public Works Department to prepare a map and legal description which would include not only the parcel proffered by Sade but also an adjoining parcel, the 4.7-acre parcel owned by plaintiffs, with approximately equivalent frontage on the same road. The city planning department also obtained the following figures of assessed valuation from the county assessor's office: Sade parcel: land $24,000, improvements zero; plaintiffs' parcel: land $11,830, improvements $5,050, total $16,880.

On November 20 the city and Sade submitted an application to the Ventura County LAFCO for approval of the annexation, which included plaintiffs' property. In answering a questionnaire Sade stated the reason he was applying for annexation was to obtain city sewer service necessary to develop his property. The city's questionnaire included a statement that annexation would not affect the tax rate because there is no city property tax.

On November 24 the city clerk notified plaintiffs that Sade had applied for annexation of his parcel, that plaintiffs' parcel "has been added to this request to allow for a more reasonable annexation boundary configuration," and that LAFCO would be holding a hearing on the application at a time and place which could be ascertained from that agency. In reply plaintiffs, through counsel, objected to annexation of their property. Sade, on

learning of this objection, asked the city to proceed without including plaintiffs' property.

On January 5, 1971, the interested parties appeared through counsel at a city council meeting. Plaintiffs' attorney explained that his clients were "concerned that future problems may arise under zoning regulations due to the use of their property, which is a dog kennel for breeding and showing dogs." The city council by unanimous vote refused to delete plaintiffs' parcel from the annexation proposal. On January 13 LAFCO approved the proposal, subject to the inclusion of an additional 10.1-acre parcel also owned by Sade. Plaintiffs did not appear at the LAFCO hearing.[5]

Having received LAFCO approval, the city council on January 26 adopted a resolution formally giving notice of the proposed annexation of territory which included all three parcels and setting March 9th as the date for a public hearing and for the filing of written protests by property owners within the area proposed to be annexed. (§§ 35305-35307, 35310.) Plaintiffs filed their written protest in which they stated that they were not only property owners but also residents of the territory and had been registered voters therein for more than 54 days prior to the institution of the annexation proceedings. They objected to the annexation "on all legal grounds" and particularly specified the ground that the annexation "is a taking without due process of law" in violation of the Constitutions of California and the United States. They also appeared through counsel as the only protesting property owners at the hearing on March 9.

The city planning director reported at the hearing on March 9 that the assessed value of the lands and improvements owned by plaintiffs was less than one half the assessed value of the lands in and improvements on the territory within the proposed annexation.[6] The council formally resolved that no majority protest had been made and that the annexation proceedings were complete. On March 16 the city council adopted a formal annexation ordinance to become effective on April 16.

The present mandate proceeding was commenced on April 15, the day

[5]Nonappearance at the LAFCO hearing is inferred from the allegations in plaintiffs' replication to answer (see *Scott* v. *Superior Court* (1928) 205 Cal. 525, 526-527 [271 P. 906]; *Lotus Car Ltd.* v. *Municipal Court* (1968) 263 Cal.App.2d 264, 268 [69 Cal.Rptr. 384]) that "no formal objection was presented to [LAFCO], but . . . [LAFCO] was aware of [plaintiffs' objections. . . ."

[6]At the March 9 city council meeting, the planning director stated that the total assessed value of the territory was $40,880, of which the value attributable to plaintiffs' property was $16,880. However, these were the figures reported by the county assessor for the 14.6-acre annexation proposal originally submitted to LAFCO and therefore included no value attributable to the 10.1-acre parcel that LAFCO required be added to the annexation territory as a condition of its approval.

before the city might have completed the annexation under the 1939 act by filing the ordinance with the Secretary of State. (§§ 35316-35318.) Plaintiffs' petition, which sought to set aside the annexation proceedings, was denied by a judgment signed on June 14 and entered June 16, 1971.[7] The judgment recites that at the hearing on the merits, plaintiffs and defendants stipulated that the proceedings before LAFCO and the city council "were regular and followed applicable State law on annexation matters." There is no indication that the court made any written findings of fact or conclusions of law.

Defendants make several procedural challenges to the maintenance of this proceeding. It is not necessary that we reach and resolve such issues, however, in view of our conclusion that none of plaintiffs' objections to the annexation proceedings can be sustained. We thus address ourselves to the merits of the petition.

■ "Municipal corporations are political subdivisions of the state. Subject only to its own laws and constitution, the state may create, expand, diminish, or abolish such subdivisions, and 'all this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest.' (*Hunter* v. *Pittsburgh* (1907) 207 U.S. 161, 179 [52 L.Ed. 151, 159, 28 S.Ct. 40]; see *San Francisco* v. *Canavan* (1872) 42 Cal. 541, 557-558.)" (*Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 951 [104 Cal.Rptr. 297, 501 P.2d 537].) ■ The annexation of territory to cities is a matter of general state importance under control of the Legislature. (*People* v. *City of Long Beach* (1909) 155 Cal. 604, 609-610 [102 P. 664]; *People* v. *City of Oakland* (1899) 123 Cal. 598, 604 [56 P. 445].) ■ At least 32 states have procedures by which municipalities may annex territory without the consent of its residents or property owners (Holliman, *Invisible Boundaries and Political Responsibility: A Proposal for Revision of California Annexation Laws* (1972) 3 Pacific L.J. 533, 546) and such unilateral annexation procedures do not infringe on the inhabitants' or the owners' rights to due process of law merely because their consent is not obtained. (*Hunter* v. *Pittsburgh,* 207 U.S. 161, 179 [52 L.Ed. 151, 159, 28 S.Ct. 40]; *Deane Hill Country Club, Inc.* v. *City of Knoxville* (6th Cir. 1967) 379 F.2d 321, 324-325; *Detroit Edison Co.* v. *East China Township Sch. Dist. No. 3* (6th Cir. 1967) 378 F.2d 225, cert.

[7]The judgment was combined with an order discharging an alternative writ and dissolving a temporary stay order; the combined document was filed as well as entered on June 16.

No temporary stay order or alternative writ is included in the record, but both were prayed for in plaintiffs' petition, and we presume that they were duly made. (*Dumas* v. *Stark* (1961) 56 Cal.2d 673, 674 [16 Cal.Rptr. 368, 365 P.2d 424].)

den., 389 U.S. 932 [19 L.Ed.2d 284, 88 S.Ct. 296]; see *People* v. *City of Palm Springs* (1958) 51 Cal.2d 38, 47 [331 P.2d 4].)[8]

■ Annexation procedures clearly constitute state action and are thus subject to the equal protection provisions of the Fourteenth Amendment and of the California Constitution (art. I, §§ 11, 21). *(Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d at p. 951.) ■ As previously stated plaintiffs complain that the annexation of their land to the city under the 1939 act without requiring an election at which they, as residents of the territory proposed to be annexed, approve the annexation by majority vote deprives them of equal protection. The basis of their contention is that if the annexed territory were not classified as "uninhabited," it would have to be annexed under the 1913 act under which an election would be required and that the territory is thus classified as uninhabited solely by reason of the fact that fewer than 12 persons who had been registered to vote within the territory for at least 54 days resided there when the annexation proceedings were commenced. (§ 35303.) Plaintiffs were at all relevant times the only two such registered voters and indeed were the only two inhabitants of the entire territory. They argue that the effect of the 1939 act is to "disenfranchise" any group of fewer than 12 registered voters whose home territory is about to be annexed by drawing an "arbitrary line" between that group and a group of 12 or more persons in a similar situation who would be entitled to register their approval or disapproval of the annexation by secret ballot under the 1913 act (§§ 35122-35135).[9]

Two tests are applied by the United States Supreme Court and this court in examining state statutory classifications for violations of the constitutional guarantees of equal protection. ■ In ordinary equal protection

---

[8]It should be noted that we deal here with a claimed right to vote in an election in which the residents' majority vote in the negative would be a complete bar to annexation. Denial of such an election is very different from denial of a right of the residents to be heard and have their views duly considered by those with power to make a binding determination on whether their property should be annexed. Plaintiffs appeared and presented their views at the city council hearing and had an opportunity to do the same at the LAFCO hearing. Thus they were afforded hearing rights of the kind upheld in *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137]. (See *Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d at p. 965, fn. 31.)

[9]In characterizing their denial of a right to vote on annexation as a disenfranchisement, plaintiffs point not only to the 1913 act but also to the provisions for altering the boundaries of contiguous cities by transferring territory from one city to the other (§§ 35250-35280). Although these provisions include procedures requiring the approval of a majority of the voters in an election for residents of the transferred territory (§§ 35252-35255, 35277-35277.4), they also authorize the county board of supervisors to permit inter-city transfers of territory without an election (§§ 35273, 35278).

cases not involving suspect classifications or the alleged infringement of a fundamental interest, the classification is upheld if it bears a rational relationship to a legitimate state purpose. (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 808-809 [22 L.Ed.2d 739, 745-746, 89 S.Ct. 1404]; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101]; *Estate of Horman* (1971) 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785].) ▮ But if the statutory scheme imposes a suspect classification, such as one based on race (*Korematsu* v. *United States* (1944) 323 U.S. 214, 216 [89 L.Ed. 194, 198-199, 65 S.Ct. 193]), or a classification which infringes on a fundamental interest, such as the right to pursue a lawful occupation (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 579 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]) or the right to vote (*Kramer* v. *Union School District* (1969) 395 U.S. 621, 626 [23 L.Ed.2d 583, 588-589, 89 S.Ct. 1886]), the classification must be closely scrutinized and may be upheld only if it is necessary for the furtherance of a compelling state interest. (*In re Gary W.* (1971) 5 Cal.3d 296, 306 [96 Cal.Rptr. 1, 486 P.2d 1201]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds (1971) 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224].)

Plaintiffs contend that the legislative distinction between annexations of inhabited and uninhabited territory impairs their fundamental interest in their right to vote. They argue that the withholding of any opportunity to vote on annexation from groups of 11 or fewer resident voters while granting the right to more numerous groups is an infringement of the right to vote demanding close scrutiny and requiring the justification of a compelling state interest. They rely on decisions of the United States Supreme Court applying the strict test and invalidating classifications which selectively excluded particular classes of voters from participation in elections even though their interest in the outcome was as substantial as that of the persons who were permitted to vote. Thus in *Kramer* v. *Union School District, supra,* 395 U.S. 621, the court invalidated a New York statute confining the right to vote in school board elections to property owners and parents of school children. In *Cipriano* v. *City of Houma* (1969) 395 U.S. 701 [23 L.Ed.2d 647, 89 S.Ct. 1897], a Louisiana statute which permitted only property owners to vote on the approval of revenue bonds to be issued by a municipal utility district was held invalid under the equal protection clause. In *Carrington* v. *Rash* (1965) 380 U.S. 89 [13 L.Ed.2d 675, 85 S.Ct. 775], the exclusion from Texas elections of members of the armed forces who moved to Texas while in service was also held violative of equal protection. In *Gomillion* v. *Lightfoot* (1960) 364 U.S. 339 [5

L.Ed.2d 110, 81 S.Ct. 125], the court invoked the Fifteenth Amendment to strike down a law revising the boundaries of the City of Tuskegee, Alabama, whose clear purpose and result was to exclude from the city most of the black citizens who had previously voted in municipal elections while retaining most of the white voters as city residents.

All of the foregoing cases are distinguishable on the ground that in each instance the classification was designed to exclude from an election an "identifiable class" of electors. (*Gordon* v. *Lance* (1971) 403 U.S. 1, 7 [29 L.Ed.2d 273, 277, 91 S.Ct. 1889].) When the exclusion could not be justified on the ground that it served a compelling state interest it was held to deny equal protection of the laws. In the instant case no issue of the exclusion of a class from participation in an election is raised; the issue instead is whether the inclusion or exclusion of any election as part of an annexation proceeding can justifiably be made to depend on the number of resident registered voters.

In other cases the high court has closely scrutinized and invalidated measures which touch upon or burden the right to vote by imposing a poll tax (*Harper* v. *Virginia Bd. of Elections* (1966) 383 U.S. 663 [16 L.Ed.2d 169, 86 S.Ct. 1079]), by substantially diluting the weight of one person's vote in relation to others' (e.g., *Avery* v. *Midland County* (1968) 390 U.S. 474 [20 L.Ed.2d 45, 88 S.Ct. 1114]), or by imposing unreasonable conditions on the placing of candidates' names on the ballot (*Williams* v. *Rhodes* (1968) 393 U.S. 23 [21 L.Ed.2d 24, 89 S.Ct. 5]). We also have invalidated similar burdens on the right to vote. (*Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942.) Although the formation of a city in California requires majority approval at an election of prospective residents (§§ 34324-34326), the owners of lands representing 51 percent of the value of all lands within the proposed city were granted the power to prevent the holding of such an election by the simple process of filing of a written protest. (§ 34311.) We held that such grant of power to the landowners touched upon and burdened the right to vote of the prospective residents and, as it did not further any compelling state interest, was an unconstitutional denial of equal protection of the laws. Each of these decisions, including *Curtis,* involves an unconstitutional impairment ·of voting rights in elections actually provided for by state law, as distinct from the claim now advanced by plaintiffs that it is unconstitutional for the Legislature not to have provided for an annexation election in the

circumstances of the instant case although providing for it in other circumstances.[10]

As the Legislature could constitutionally have provided that all annexations to cities be accomplished without a vote of the residents of the territory proposed to be annexed, and as the 1939 act provides for annexation without an election, the instant case involves no deprivation of or limitation on the fundamental right to vote calling for close scrutiny or justification on the basis of a compelling state interest.

■ The applicable standard here involved is instead the traditional one: "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally . . . and their statutory classifications will be set aside only if no grounds can be conceived to justify them. [Citations.]" (*McDonald* v. *Board of Election, supra,* 394 U.S. at p. 809 [22 L.Ed.2d at pp. 745-746].) In *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 502-506 [96 Cal.Rptr. 553, 487 P.2d 1193], we applied this traditional test to reject constitutional challenges to the governmental structure of the Tahoe Regional Planning Agency based on the absence of provisions for the election of its governing board or for the rights of initiative, referendum, or recall. It was there urged that because residents of California counties enjoy these electoral rights with respect to their county governments, the absence of such rights in the governance of the regional planning agency denied equal protection to California citizens within the agency's jurisdiction. In rejecting this contention, we said, "[T]he

---

[10]We are not required to deal in the instant case with the validity of the provision in the 1939 act which would require a termination of proceedings upon a protest by property owners representing a majority of the total assessed valuation. (§ 35313.) As noted, although plaintiffs protested, the value of their property was less than one-half of the total value of property proposed to be annexed. The unconstitutionality of the power of majority property owners to block an election for municipal incorporation (*Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942) does not necessarily indicate invalidity of the power of majority property owners to terminate annexation proceedings under the 1939 act. Invalidation of the incorporation protest provision was compelled by the limitation it placed on the right of the residents to participate in an election, whereas the similar provision in the 1939 act does not affect the holding of any election. Moreover, annexation of undeveloped and sparsely inhabited territory may involve policy considerations not present in the balancing of the relative interests of voting residents and landowners in a populated area. (See *Burrey* v. *Embarcadero Mun. Improvement Dist.* (1971) 5 Cal.3d 671, 677, fn. 6 [97 Cal.Rptr. 203, 488 P.2d 395].) We adhere to our holding in *Curtis* and nothing we now hold is to be construed as inconsistent therewith.

concept of equal protection of the laws means simply 'that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 . . . .)" (*Id.* at p. 502.)

Two recent federal decisions have applied the traditional equal protection standard to claims closely similar to those advanced here. In both cases citizens of unincorporated areas, which an adjoining city proposed to annex, challenged the annexation as a denial of equal protection on the ground that the applicable statutes denied them a right to vote on whether to be annexed and yet provided such voting rights for annexations being effected under certain other sets of circumstances. In both cases the court rejected the contention that there was any impairment of voting rights which could be sustained only if necessary to further a compelling state interest and held that the legislative distinctions between annexation procedures were reasonably related to a legitimate state purpose and therefore did not deny equal protection. (*Murphy* v. *Kansas City Missouri* (W.D.Mo. 1972) 347 F.Supp. 837; *Adams* v. *City of Colorado Springs* (D.Colo. 1970) 308 F.Supp. 1397, affd. 399 U.S. 901 [26 L.Ed.2d 555, 90 S.Ct. 2197]. See also *Garren* v. *City of Winston-Salem, North Carolina* (4th Cir. 1972) 463 F.2d 54.)

We next address ourselves to the question whether the classification in the instant case meets the traditional equal protection standard. As originally enacted the 1939 act applied only to annexations of territories which were completely uninhabited. (Stats. 1939, ch. 297, § 1, p. 1567.) A predecessor act of 1899 also provided specially for the annexation of similar uninhabited territory. (Stats. 1899, ch. 41, p. 37; see *Shepherd* v. *Board of Supervisors* (1934) 137 Cal.App. 421 [30 P.2d 578].) The purpose of these enactments was to provide a means of annexing territory which was incapable of annexation under statutes requiring voter approval as no voter resided therein to exercise the right of franchise. (*People* v. *Town of Ontario* (1906) 148 Cal. 625, 634 [84 P. 205].)

In 1945 the 1939 act was amended to permit its application to the annexation of "territory wherein less than three qualified electors reside." (Stats. 1945, ch. 506, § 1, p. 1006.) Two years later the act was again amended so as to apply to annexations of "territory wherein less than 12 registered voters reside" at the time annexation proceedings were commenced. (Stats. 1947, ch. 419, § 3, p. 1036.)[11] The amendment was given

---

[11]Under an amendment adopted in 1961, the 1939 act now applies to annexations of territory containing fewer than 12 residents "who have been registered to vote within the territory for at least 54 days" when the annexation proceedings are commenced. (§ 35303; Stats. 1961, ch. 1988, § 15, p. 4183.)

immediate effect as an urgency measure (see Cal. Const., art. IV, § 8), and the legislative statement of necessity illumines the purpose of the amendment: "The extreme shortage of housing in the State of California and the lack of a sufficient number of vacant lots within cities on which to build such housing has made it necessary to build outside of cities and in the fringe areas adjacent thereto. In order to provide such housing with the necessary sewage, sanitation and utility services, it is essential that such areas be permitted to annex to contiguous cities which would be able to extend existing municipal services to the annexed areas. The immediate adoption of this act will enable cities and areas adjacent thereto which desire to annex to such cities to provide police, fire protection, sewage and sanitation services to such housing as soon as constructed." (Stats. 1947, ch. 419, § 4, p. 1036.)

Some 14 years after the adoption of the 1939 act we described its purpose in these words: "The act seeks to facilitate the continued development of California's cities and to permit the extension of the needed and beneficial services of municipalities to the citizens of the state. (Annexation and Related Incorporation Problems in the State of California, 6 Assembly Interim Committee Reports No. 16, p. 32 (1961) . . . see also *People* v. *City of Los Angeles* (1908) 154 Cal. 220 [97 P. 311]; *People* v. *City of Palm Springs* (1958) 51 Cal.2d 38 [331 P.2d 4].)" (*Forest Lawn Co.* v. *City Council* (1963) 60 Cal.2d 516, 519 [35 Cal.Rptr. 65, 386 P.2d 665].)

The 1939 act is thus based on a different concept from that of the 1913 act. The earlier act provides a vehicle for annexation when residents of a territory decide that they wish to become part of a municipality, enjoying municipal services and assuming the corresponding obligations of citizenship within a municipality. Accordingly, annexations under the 1913 act must be initiated by a petition of one-fourth of the resident registered voters of the territory and approved by a majority vote at a special election for those residents. (§§ 35116, 35134-35136.) In contrast, the focus of the 1939 act is on the development of uninhabited land. The interests of the few residents, if any, are submerged to the interests of the landowners and the city, but all interested parties are nevertheless given a voice through LAFCO (§§ 54790-54799.2) in the determination of the ultimate use of the territory. The 1939 act, reflecting these relative interests, provides for the initiation of annexation proceedings either by the city itself (§ 35310), or by petition of "the owners of not less than one-fourth of the land in the territory by area, and by assessed value." (§ 35305.) The act does not make the vote or consent of the relatively small number of inhabitants a prerequisite of annexation.

The case before us illustrates the type of situation for which the 1939 act was intended. Out of the 24.7 acres proposed to be annexed, the two plaintiffs own 4.7 acres on which they reside and maintain dog kennels. The remaining 20 acres are uninhabited. The contemplated city zoning is "Residential Planned Development 20 units to the acre"; thus there is a potential for the construction of up to 400 dwelling units on these 20 acres. In keeping with the central purpose of the 1939 act, plaintiffs, living in one dwelling unit, may not thwart the extension of municipal services to the future occupants of the possible 400 units which may be constructed on the remainder of the territory.

■ It is true that the definition in the 1939 act of "uninhabited" territory as territory containing fewer than 12 resident registered voters, without regard to any other factors, such as the total number of inhabitants or the ratio of the number of voters or inhabitants to the territory's geographic area, does not in other circumstances preclude possible applications of the 1939 act to the annexation of territory which is in fact substantially inhabited. Some forms of boundary manipulation or other arbitrary action for the purpose of circumventing the legislative classification between uninhabited and inhabited territory have been voided by the courts or prohibited by statute.[12] The 1939 act, however, does not provide a minimum size for territory proposed to be annexed and it is thus possible that a small area may have a high population density and still be considered

---

[12]California appellate courts have invalidated the following attempts to circumvent the distinction between "uninhabited" territory annexable under the 1939 act and inhabited territory annexable under the 1913 act: (1) simultaneous 1939 act proceedings to annex territories contiguous to each other, each of which contains fewer than 12 resident voters but which together contain more than 12, disqualifying the combined territories under the 1939 act (*City of Anaheim* v. *City of Fullerton* (1951) 102 Cal.App.2d 395, 403 [227 P.2d 494]); (2) inclusion of a separable tract of uninhabited land in otherwise inhabited territory being annexed under the 1913 act (*U. S. Pipe & Foundry Co.* v. *City Council* (1957) 150 Cal.App.2d 630 [310 P.2d 431]; *Johnson* v. *City of San Pablo* (1955) 132 Cal.App.2d 447 [283 P.2d 57]); (3) exclusion of resident registered voters from the computation determining whether the territory to be annexed is uninhabited (§ 35303) by drawing the annexation boundary so as to divide the parcels on which the voters reside and to include only those portions of the lots not occupied by their homes (*City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 391 [341 P.2d 318]; *Cothran* v. *Town Council* (1962) 209 Cal.App.2d 647 [26 Cal.Rptr. 319]).

The following practices tending to create bizarre or unnatural boundaries are prohibited by statute: (1) creation of islands or narrow strips of unincorporated territory (§§ 35002.3, 35326); (2) exclusion of the site of the residence of a property owner while including the remainder of his residence lot without his consent (§ 35008). In addition to the statutory prohibitions, the application by each county's LAFCO of the statutory criteria by which it reviews annexation proposals (§ 54796) tends to assure more rational boundaries. See Goldbach, Boundary Change in California: The Local Agency Formation Commissions (1970) page 37.

"uninhabited" because there are fewer than 12 registered voters residing thereon. The Legislature may reasonably have concluded in such situations that the expense of annexation election procedures (see §§ 35016, 35123-35133) or the governmental interest in avoiding tiny pockets of unincorporated territory outweigh considerations in favor of obtaining a majority vote of the residents. (Cf. *Olson* v. *City of Hawthorne* (1965) 235 Cal.App. 2d 51, 54-55 [45 Cal.Rptr. 48].)

 A legislative classification may satisfy the traditional equal protection test without being the most precise possible means of accomplishing its legislative purpose. Only a reasonable relationship to that purpose is required. (*Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 370-371 [66 Cal.Rptr. 710, 438 P.2d 358].) The definition of "uninhabited territory" in the 1939 act (§ 35303) is sufficiently related to legitimate legislative purposes to satisfy equal protection requirements.

The judgment is affirmed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Roth, J.,* and Kaus, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.