[Civ. No. 63411. Second Dist., Div. Four. July 28, 1982.]

DOROTHY SCURI et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF VENTURA COUNTY et al.,
Defendants and Respondents.

COUNSEL

Walter M. Leighton for Plaintiffs and Appellants.

Dorothy L. Schechter, County Counsel, and James L. McBride, Chief Assistant County Counsel, for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—This appeal is taken from a denial by the superior court of a petition for writ of mandate to set aside the decision of the Ventura County Board of Supervisors to annex certain unincorporated areas to two cities in the County of Ventura. We have concluded that the procedure involved did not violate the applicable statutes and that the statutes do not violate the Constitution.

At issue here is the annexation of four unincorporated areas, two to the City of Buenaventura and two to the City of Oxnard. These annexations were authorized under the provisions of Government Code section 35000 et seq., the municipal organization act.[1]

That act generally provides for the incorporation of unincorporated areas and for the annexation of unincorporated areas to existing cities. The act contemplates that a governmental entity, the county or city, will request of the local agency formation commission (LAFCO) au-

---

[1]All further references to code sections shall be to the Government Code, unless otherwise noted.

thority to annex a particular piece of property. (§ 35100 et seq.) LAFCO will then conduct preliminary proceedings and, if it approves. the proposed annexation, recommend the annexation to the city or county. (§§ 35150-35163.) The actual annexation proceedings are then conducted by the city or county. (§ 35200 et seq.) With respect to most annexation proceedings, an election is provided for. (§§ 35060-35071.) An exception to the election requirement is provided at section 35150, concerning the annexation of territory not exceeding 100 acres in area, substantially surrounded by the city to which annexation is proposed. Such an area is referred to as an island.

Four "island annexations" are challenged here. The first, referred to as annexation No. 3, proposed to annex to the City of Oxnard an unincorporated area commonly referred to as College Park. (See exhibit 1 attached to this opinion.) Annexation No. 17 proposed to annex to the City of Oxnard unincorporated property commonly known as McMillan Manor Island. (See exhibit 2.) Annexations Nos. 52 and 53 proposed to annex to the City of Buenaventura two unincorporated areas both commonly referred to as Montalvo. (See exhibit 3.)

With respect to all four islands, appellants contend that their annexation is unlawful, in that the authorizing statute unconstitutionally deprives them of the right to vote on the annexation procedure, in violation of the equal protection clause of the United States Constitution.

With respect to islands numbers 3, 52 and 53, it is further contended that they do not qualify as islands and thus may not be annexed in the absence of an election.

I

■ Appellants' constitutional argument is grounded in the distinction between residents of territory consisting of more than 100 acres and territory consisting of fewer than 100 acres. Residents of the larger areas have the right to protest and vote in annexation proceedings. (§ 35228.) By contrast, residents of territory consisting of fewer than 100 acres are not entitled to participate in any election on the subject. (§ 35150, subd. (f).) Contrary to appellants' contention that the strict scrutiny test applies here, because the denial of equal protection takes the form of a denial of voting rights, California courts have not so treated this issue. ■ To begin with, it is well established that the state may create, expand, diminish, or totally abolish municipal corpo-

rations with or without the consent of its citizens, or even against their protest. (See, e.g., *Hunter* v. *Pittsburgh* (1907) 207 U.S. 161, 179 [52 L.Ed. 151, 159, 28 S.Ct. 40]; *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 951 [104 Cal.Rptr. 297, 501 P.2d 537].) Still, annexation procedures are state actions and thus subject to the equal protection provisions of the Fourteenth Amendment and of the California Constitution. (*Curtis* v. *Board of Supervisors, supra*, 7 Cal.3d at p. 951.) ▊ However, appellants are mistaken in their contention that the strict scrutiny test must be applied to determine whether the distinction violates the equal protection provisions.

In *Weber* v. *City Council* (1973) 9 Cal.3d 950 [109 Cal.Rptr. 553, 513 P.2d 601], the California Supreme Court examined a similar distinction under this same act, where the annexation of uninhabited territory authorized no election, while residents of inhabited territory were entitled to vote. Uninhabited territory was defined in the act as an area where fewer than 12 registered voters resided. (*Weber* v. *City Council, supra*, at p. 958.) The Supreme Court distinguished other cases, including *Curtis* v. *Board of Supervisors, supra*, 7 Cal.3d 942 (relied on by appellants here) where classes of persons were excluded from participation in an election provided for by state law. In *Weber*, the issue was not the unconstitutional impairment of individual voting rights, but the right of the Legislature not to have provided for an annexation election under certain circumstances. (*Weber* v. *City Council, supra*, at pp. 960-961.) The *Weber* court concluded (at p. 961): "As the Legislature could constitutionally have provided that all annexations to cities be accomplished without a vote of the residents of the territory proposed to be annexed, and as the 1939 act provides for annexation without an election, the instant case involves no deprivation of or limitation on the fundamental right to vote calling for close scrutiny or justification on the basis of a compelling state interest."

The *Weber* court then evaluated the allegedly arbitrary line drawn between 12 and 13 registered voters on the traditional standard: whether the statute bore some rational relationship to a legitimate state end. The court found in the legislative statement of purpose more than sufficient justification for the distinction, concluding: "The Legislature may reasonably have concluded in such situations that the expense of annexation election procedures [citations] or the governmental interest in avoiding tiny pockets of unincorporated territory outweigh considerations in favor of obtaining a majority vote of the residents. [Citation.]" (*Weber* v. *City Council, supra*, 9 Cal.3d at p. 965.)

We see no distinction to be drawn between the *Weber* statute, discriminating on the basis of population size, and our statute, discriminating on the basis of territorial size. At issue here, too, is not the disenfranchisement of certain individuals in a particular election, but the decision of the Legislature not to provide for an election at all. That decision will be upheld if it bears any rational relationship to the legislative purpose.

The legislative purpose behind the municipal organization act is illuminated by section 35000, wherein the Legislature explains what it intends to achieve and the problems sought to be solved by the act. Concerned with the orderly growth and development of communities within the state, the Legislature seeks logical formation and determination of city boundaries. Pertinent to the provisions of section 35150, challenged here, is the legislative finding "... that when areas become urbanized to the extent that they need the full range of community services, priorities must be established regarding the type and levels of such services that the residents of an urban community need and desire; that community service priorities be established by weighing the total community service needs against the total financial resources available for securing community services; ..." (§ 35000.)

The Legislature may well have concluded that, when confronted with a large number of potential island annexations (beginning in 1979 Ventura County conducted and approved 83 island annexations), substantial fiscal savings could be affected by not including an election procedure for territories of limited geographical size, already substantially surrounded by the annexing city. The failure to provide for elections in those small communities is sufficiently related to the legitimate legislative purpose of orderly, efficient, and economical formation and determination of city boundaries to satisfy equal protection requirements.

## II

■ Appellants next contend that respondents acted in excess of their jurisdiction in the instant proceedings, in that the multiple annexations conducted here constitute a municipal reorganization, a procedure which demands an election. This contention is without merit.

Appellants cite no authority for this novel proposition, but rather select several definitions from the act which, read together and out of

context, could support the argument that more than one annexation constitutes a municipal reorganization. However, that interpretation of the statute would render virtually meaningless many of the provisions in the act, including section 35150. To conclude that whenever more than one annexation to a city is proposed it becomes by definition a municipal reorganization would defeat the previously stated legislative purpose of efficient, orderly, and logical boundary formations. ■ Principles and canons of statutory construction require that a statute be interpreted in harmony with the act of which it is a part. (See *Rose* v. *State of California* (1942) 19 Cal.2d 713, 723 [123 P.2d 505].) "Since statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers, courts may consider the consequences that might flow from a particular interpretation, and construe the statute with a view to promoting rather than defeating its general purpose and the policy behind it. [Citation.]" (*Kahn* v. *Kahn* (1977) 68 Cal.App.3d 372, 381 [137 Cal.Rptr. 332].)

The subject annexations were not a part of a municipal reorganization and therefore those rules were not applicable to the instant proceedings.

## III

■ Appellants next contend that with respect to annexation Nos. 3, 52 and 53, respondents conducted piecemeal acquisitions in violation of the 100-acre minimum requirement. Appellants first correctly cite section 35014, which provides that the authority to conduct annexations without election, under section 35150, shall not apply to any territory which did not become surrounded or substantially surrounded by the annexing city until after January 1, 1978. In each of the three annexations complained of, on January 1, 1978, they were surrounded in part by the annexing city and in part by prime agricultural land. (79.8 percent of lot No. 3 was surrounded by the City of Oxnard; 89.13 percent of lot No. 52 and 82.4 percent of lot No. 53 were surrounded by the City of Buenaventura.) After January 1, 1978, but before the subject annexations were sought, the prime agricultural land, which was contiguous to all three lots, was incorporated by subsequent nonisland annexations promoted by private developers. As a result, by the time the subject annexations were approved, all three lots were entirely surrounded by the incorporating cities. (See exhibits 1, 2 and 3 attached.)

Appellants argue first that the effective date, in order to determine whether the lots qualify for island annexation, is January 1, 1978. We agree. (See § 35014.) Appellants then argue that as of that date the islands were not surrounded or substantially surrounded by the annexing city. It is with this position that we take issue. Appellants' argument is based on their interpretation of section 35150, the island annexation provision, which states in pertinent part that the commission shall have the power:

"(f) To approve the annexation after notice and hearing, and authorize the conducting authority to order annexation of the territory without an election if the commission finds that the territory contained in an annexation proposal:

"(1) Does not exceed 100 acres in area and such area constitutes the entire island;

"(2)(A) Is surrounded or substantially surrounded by the city to which annexation is proposed or by such city and a county boundary or the Pacific Ocean; or

"(B) Is surrounded by a city and adjacent cities;

"(3) Is substantially developed or developing;

"(4) Is not prime agricultural land as defined in section 35046;

"(5) Will benefit from such annexation or is receiving benefits from the annexing city."

Appellants argue that the subject properties did not constitute the "entire island" to be annexed. Although the term "entire island" is not defined anywhere in the act, it is their position that it must be a piece of property, fewer than 100 acres in area, surrounded entirely by the city, or by a city and county, the city and the ocean, or a city and adjacent cities. Since the subject properties were not so surrounded, it is appellants' position that in January 1978, the properties consisted of the area now under consideration, plus all of the contiguous agricultural land, and that the effect of respondents' activities here was to annex first the agricultural land, thereby reducing the remaining land to an area fewer than 100 acres, thus manipulating it into the provisions of section 35150. Whatever may have been the intent of the county or the

commission, we do not agree that the subject properties were not eligible for island annexation on January 1, 1978. Subdivision (f) of section 35150 requires that the island be surrounded or "substantially surrounded" by the annexing city on that date. That section prohibits the annexation, as an island, of prime agricultural land; as to that land, different annexation procedures are required. Therefore, when a lot is substantially surrounded by the annexing city and otherwise surrounded by prime agricultural land, the government may, by the proper method, annex that part which is agricultural, and then incorporate the nonagricultural land, by whatever method is appropriate. If, as in the instant case, the remaining developed or developing land is fewer than 100 acres in size, the annexation may proceed without election.

Appellants rely on the opinion of the Attorney General in 63 Ops. Cal.Atty.Gen. 343 (1980). There, it was concluded that, if the territory sought to be annexed contains fewer than 100 acres, but constitutes a part of an unincorporated area which is more than 100 acres in area, the annexation may not proceed under section 35150. The Attorney General concluded that the Legislature did not intend to allow piecemeal annexation, by taking 99 acres at a time of a much larger territory. However, that opinion deals with a larger unincorporated area which is developed or developing and otherwise eligible for island annexation. It does not address property surrounded by the city and prime agricultural land. Therefore, its conclusion that piecemeal acquisition would be prohibited under the statute has no bearing on the instant case.

Therefore, the superior court properly denied the appellants' petition for writ of prohibition.

The order is affirmed.

. McClosky, J., and Berg, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 29, 1982.

---

*Assigned by the Chairperson of the Judicial Council.

Exhibit 1

"College Park" Annexation to Oxnard
(No. 3)

UNINCORPORATED LAND

INCORPORATED
Before January 1, 1978

INCORPORATED
After January 1, 1978

Exhibit 2

"McMillan Manor Island" Annexation to Oxnard
(No. 17)

Exhibit 3

"Montalvo" Annexations to Buenaventura
(Nos. 52 & 53)

  UNINCORPORATED LAND

  INCORPORATED
Before January 1, 1978

  INCORPORATED
After January 1, 1978