[No. AO21741. First Dist., Div. Two. Aug. 25, 1983.]

I.S.L.E. et al., Plaintiffs and Respondents, v.
COUNTY OF SANTA CLARA et al., Defendants and Appellants.

COUNSEL

Donald L. Clark, County Counsel, Donald J. Fallon, Deputy County Counsel, Louis B. Green, City Attorney, Douglas B. Aikins and Donna A. Scott, Assistant City Attorneys, for Defendants and Appellants.

Larry Sleizer and Rost, Sleizer & Giamalis for Plaintiffs and Respondents.

OPINION

ROUSE, J.—Defendants, City of Sunnyvale (City), County of Santa Clara, Board of Supervisors of the County of Santa Clara (Board of Supervisors), and Santa Clara County Local Agency Formation Commission (LAFCO), appeal from a summary judgment invalidating 16 municipal annexations and declaring unconstitutional the statute which authorized them. Plaintiffs, an unincorporated association composed of residents and owners of land in Santa Clara County, and individual residents of the territories which were annexed to the City, brought their action pursuant to Government Code section 35005 and Code of Civil Procedure section 860 et seq. to determine the validity of the annexations, which were conducted under the provisions of Government Code section 35000 et seq., the Municipal Organization Act of 1977 (Act).[1] We conclude that the annexations were properly conducted pursuant to a constitutional statute and, accordingly, reverse the judgment of the court below.

The Act sets forth procedures for the incorporation of cities, annexations, detachments and other municipal boundary changes. The general provisions for annexations (§ 35220 et seq.) include a formal protest procedure and, if written protests are filed by 25 percent or more of the registered voters or property owners in the territory to be annexed, a special election in such territory at which a majority of the votes cast must be in favor of annexation (§§ 35228, 35236). At the time of the annexations in question, an exception

---

[1] All further statutory references are to the Government Code.

to the protest/election requirement was contained in section 35150, subdivision (f), for the annexation of territory not exceeding 100 acres in area and substantially surrounded by the city to which annexation is proposed.[2] Such an area is referred to as an island.

The facts concerning the 16 annexations at issue here are not disputed. On March 13, 1979, the City Council of Sunnyvale passed eight resolutions of application to be submitted to LAFCO requesting annexation of eight territories. The city council passed five resolutions of application for the annexation of five additional territories on April 10, 1979, and three resolutions of application for the annexation of three more territories on May 8, 1979. On July 11, 1979, LAFCO, after holding public hearings, passed 16 resolutions approving the 16 proposed island annexations to the City. The Board of Supervisors on April 7, 1980, after holding public hearings, adopted 16 resolutions and orders annexing the 16 territories. Certificates of completion were executed by the executive officer of LAFCO on April 17, 1980, with respect to 15 of the annexations, and the certificate of completion with respect to the 16th annexation was executed on April 21, 1980.[3]

Plaintiffs' complaint set forth seven causes of action, each alleging on a separate ground that the annexation proceedings were invalid. Subsequently, plaintiffs conceded all but the first cause of action, maintaining that the 16

---

[2]This exception was eliminated by a 1981 amendment to section 35150. (Stats. 1981, ch. 855, § 1.5, pp. 3280-3281.) The section applicable to this case reads in relevant part as follows:

"The commission shall have the powers and duties set forth in Chapter 6.6 (commencing with Section 54773) of Part 1, Division 2, Title 5, and such additional powers and duties as are specified in this part, including the following: . . .

"(f) To approve the annexation after notice and hearing, and authorize the conducting authority to order annexation of the territory without an election if the commission finds that the territory contained in an annexation proposal:

"(1) Does not exceed 100 acres in area and such area constitutes the entire island;

"(2) (A) Is surrounded or substantially surrounded by the city to which annexation is proposed or by such city and a county boundary or the Pacific Ocean; or

"(B) Is surrounded by a city and adjacent cities;

"(3) Is substantially developed or developing;

"(4) Is not prime agricultural land as defined in Section 35046; and

"(5) Will benefit from such annexation or is receiving benefits from the annexing city.

"The finding required pursuant to paragraph (3) of this subdivision shall be based upon one or more factors, including, but not limited to:

"(i) The availability of public utility services.

"(ii) The presence of public improvements.

"(iii) The presence of physical improvements upon the parcel or parcels within such area." (Stats. 1978, ch. 339, § 9, pp. 716-717.)

Section 35150 has been further amended to reinstate the exception effective January 1, 1988. (Stats. 1981, ch. 855, § 2, pp. 3282-3283.)

[3]These proceedings were conducted pursuant to the provisions of sections 35031, subdivision (c), 35100-35102, 35140-35150, 35224.5 and 35350, subdivision (b).

island annexations were a municipal reorganization and thus subject to the statutory protest/election provisions for reorganizations, and the third cause of action, contending that the exception to the election requirement contained in section 35150, subdivision (f), violated the equal protection guarantees of the California and United States Constitutions. Both plaintiffs and defendants moved for summary judgment with respect to these two causes of action. Plaintiffs' motion for summary judgment was granted, the court ruling, "The simultaneous 16 proceedings were a municipal reorganization under the statute then in effect, and the legislation requires an election in the affected territory," and "Denial of the vote to the inhabitants of this populated area because of the exact acreage involved cannot withstand the strict scrutiny test and is invalid." Judgment was entered on February 8, 1983, granting judgment to plaintiffs on the first and third causes of action, and dismissing the remaining causes of action. This appeal from the summary judgment followed.

■ Plaintiffs first contend that the 16 annexations, which they characterize as "simultaneous," actually constituted a municipal reorganization, requiring a protest/election procedure. At the time of these annexations, section 35042, subdivision (b), defined a municipal reorganization in relevant part as "Two or more changes of organization proposed for any single city."

The contention that multiple island annexations constituted a municipal reorganization was recently rejected in *Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400, 406-407 [185 Cal.Rptr. 18]. *Scuri* involved the annexation of two islands to the City of Buenaventura and two to the City of Oxnard. The court held that "[t]o conclude that whenever more than one annexation to a city is proposed it becomes by definition a municipal reorganization would defeat the . . . legislative purpose of efficient, orderly and logical boundary formations." (*Id.*, at p. 407.) Plaintiffs seek to distinguish *Scuri* by arguing that there was no indication there that the four annexations "took place at the same time or even approximately the same time." There is similarly no indication that the annexations in *Scuri* were not conducted at the same time. The *Scuri* court apparently did not consider the timing of the annexations important and neither do we.[4] Each of the 16 annexations

---

[4]The passage of the resolutions of application here occurred on three separate days in three separate months. Although the resolutions of approval and adoption were passed on the same day, the certificates of completion were not all executed on the same day. Plaintiffs described the annexations as occurring "nearly simultaneously" at one point in their brief; both parties, however, have generally referred to the annexations as "simultaneous." We have therefore deemed them to be simultaneous in considering plaintiffs' arguments.

here met the requirements of section 35150, subdivision (f), and qualified as a proper island annexation.[5]

Plaintiffs finally argue that because section 35042, subdivision (b), was amended in 1981 to define a municipal organization in relevant part as "Two or more changes of organization proposed *in a single proposal* for any single city" (Stats. 1981, ch. 961, § 2, p. 3647), the Legislature intended to change the law, and the definition before the amendment thus had to include changes of organizations contained in more than one proposal, as in the present case. Defendants respond that the 1981 amendment merely clarified the Legislature's intention to permit consideration of more than one island annexation proceeding at one time. We agree with defendants and note that the Legislative Counsel stated that the amendment would "more specifically define the term 'municipal reorganization.'" (Legis. Counsel's Dig. of Assem. Bill No. 1158, 4 Stats. 1981 (Reg. Sess.) Summary Dig., p. 297.) Were plaintiffs' contention that the annexations constituted a municipal reorganization correct, any confirmation of the voters would have required a separate election for each island territory (§ 35311, subd. (b)), and a lack of majority vote in any one island election would have defeated all of the island annexations (§ 35314, subd. (b)). We do not believe that such was the intention of the Legislature prior to the amendment to section 35042, subdivision (b), and reject the contention that this was a municipal reorganization.

■ Having determined that the annexations were not required to be conducted under the procedures for a municipal reorganization, we must consider plaintiffs' argument that the provisions of section 35150, subdivision (f), deny equal protection to the residents, voters and property owners (residents) in the annexed territories. They contend that because residents of areas which exceed 100 acres in size are entitled to protest and/or vote on annexation to a city under the Act, the state is constitutionally required to grant a similar right to residents of territories which do not exceed 100 acres.

■ Two tests are applied by the United States Supreme Court and the California courts in examining state statutory classifications for violations of the constitutional guarantees of equal protection. "'In the typical equal

---

[5]Plaintiffs rely upon *City of Anaheim* v. *City of Fullerton* (1951) 102 Cal.App.2d 395 [227 P.2d 494], to suggest that even if the separate annexations were properly processed, the court should treat this as one proceeding because the defendants were attempting to evade the purpose of the statutes providing for elections. Significantly, in *City of Anaheim* there was evidence of bad faith motivation in attempting to annex as two uninhabited territories an area the court deemed to be one inhabited territory. There has been no allegation of bad faith in the present case.

protection case the classification need only bear a rational relationship to a conceivable legitimate state purpose; "[on] the other hand, in cases involving 'suspect classifications' or touching on 'fundamental interest,' . . . the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations omitted.] Under the strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." '" (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798-799 [187 Cal.Rptr. 398, 654 P.2d 168], italics in original, quoting *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 951-952 [104 Cal.Rptr. 297, 501 P.2d 537].)

In *Weber* v. *City Council* (1973) 9 Cal.3d 950 [109 Cal.Rptr. 553, 513 P.2d 601], the California Supreme Court considered an equal protection challenge to a statute authorizing the annexation of uninhabited territory (defined as having fewer than 12 registered voters) without election, while residents of inhabited territory were entitled to vote on annexations. The court there reviewed the circumstances in which the strict scrutiny standard has been applied in the context of voting rights cases and concluded that each of the cases applying such standard involved "an unconstitutional impairment of voting rights in elections *actually provided for* by state law, as distinct from the claim now advanced by plaintiffs that it is unconstitutional for the Legislature not to have provided for an annexation election in the circumstances of the instant case although providing for it in other circumstances. [Fn. omitted.]" (*Weber* v. *City Council, supra,* 9 Cal.3d at pp. 960-961; italics added.) Thus, for example, the strict scrutiny standard has been applied to measures which restrict the franchise in school district elections (*Kramer* v. *Union School District* (1969) 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886]); impose unreasonable conditions on the placing of candidates' names on the ballot (*Williams* v. *Rhodes* (1968) 393 U.S. 23 [21 L.Ed.2d 24, 89 S.Ct. 5]); substantially dilute the weight of one person's vote in relation to the weight of others' votes (*Avery* v. *Midland County* (1968) 390 U.S. 474 [20 L.Ed.2d 45, 88 S.Ct. 1114]); or impose a poll tax (*Harper* v. *Virginia Bd. of Elections* (1966) 383 U.S. 663 [16 L.Ed.2d 169, 86 S.Ct. 1079]). And, in *Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942, the court strictly scrutinized provisions which permitted owners of lands representing 51 percent of the total assessed valuation of all lands within a proposed city to prevent the holding of an otherwise required election on incorporation by filing protests.

The *Weber* court held that because the Legislature could constitutionally have provided that all annexations to cities be accomplished without elections (see *Hunter* v. *Pittsburgh* (1907) 207 U.S. 161, 179 [52 L.Ed. 151,

159, 28 S.Ct. 40]; *Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d at p. 951), *Weber* involved no deprivation of or limitation on the fundamental right to vote calling for close scrutiny or justification on the basis of a compelling state interest. (*Weber* v. *City Council, supra,* 9 Cal.3d at p. 961; see also *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 502-506 [96 Cal.Rptr. 553, 487 P.2d 1193].)

In *Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d 400, the court was faced with an equal protection challenge to section 35150, subdivision (f), identical to that in the instant case. The *Scuri* court found the reasoning of *Weber* controlling and applied the traditional standard: whether the distinction drawn by the statute bore some rational relationship to a legitimate state end. (*Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d at pp. 405-406.) Plaintiffs here argue that *Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, and *Citizens Against Forced Annexation* v. *Local Agency Formation Com.* (1982) 32 Cal.3d 816 [187 Cal.Rptr. 423, 654 P.2d 193], both of which were decided after *Scuri,* require the application of the strict scrutiny standard in this case. We find nothing in those cases to affect the analysis of *Weber.* Both involved situations where elections had actually been provided for, and the franchise was granted to one group to the detriment of another. In *Fullerton,* a portion of a school district sought to withdraw, and only residents of the withdrawing portion, not residents of the remainder of the district, were given the right to vote. In *Citizens Against Forced Annexation,* a territory was proposed for annexation to a city, and only residents of the territory, not residents of the city, were given the right to vote on annexation.

██ We turn now to the issue of whether the classification drawn by section 35150, subdivision (f), based upon area size of not more than 100 acres, bears a rational relationship to a legitimate state end. In *Weber* v. *City Council, supra,* 9 Cal.3d 950, the court determined that the Legislature may reasonably have concluded that the expense of annexation election procedures or the governmental interest in avoiding tiny pockets of unincorporated territory outweigh considerations in favor of obtaining a majority vote of the residents in areas with small registered voter population. (*Id.,* at pp. 964-965.) The *Scuri* court found the geographic classification of section 35150, subdivision (f), likewise rationally related to the legitimate state purposes of fiscal savings for annexations of territories of limited geographic size and of orderly, efficient and economical formation and determination of city boundaries. (*Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d 400, 406.)

We agree with the holdings of *Weber* and *Scuri* that the state has legitimate interests in avoiding annexation election expense for small communi-

ties, avoiding tiny pockets of unincorporated territory and promoting orderly and efficient formation and determination of city boundaries. ■ ■ ■ ■ And, like the court in *Scuri*, we conclude that section 35150's classification, by substantially limiting the size of territories which may be annexed without election, bears a rational relationship to those ends.[6]

The judgment granting summary judgment to plaintiffs on the first and third causes of action is reversed and the cause is remanded to the trial court with directions to enter summary judgment in favor of defendants on those two causes of action.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied September 16, 1983.

---

[6]The case before us illustrates the use of section 35150, subdivision (f), to annex a number of small pockets of unincorporated territory and avoid the time and expense required for the holding of elections. The 16 annexed territories ranged in size from 0.324 acres to 75.996 acres. Fifteen of the territories had under 25 acres, and 12 had under 9 acres. The total population of the 16 territories was 2,024. Although the record does not disclose the population breakdown by territories, it does disclose the populations of 5 of the territories as 4, 7, 13, 40 and 264. Plaintiffs have suggested that a more appropriate classification might be one based upon population density. Even if that were so, "[a] legislative classification may satisfy the traditional equal protection test without being the most precise possible means of accomplishing its legislative purpose." (*Weber* v. *City Council, supra,* 9 Cal.3d 950, 965.)