[No. A015501. First Dist., Div. Three. Feb. 16, 1984.]

RICHARD G. BECK et al., Plaintiffs and Appellants, v.
COUNTY OF SAN MATEO et al., Defendants and Respondents.

COUNSEL

Larry Sleizer and Susan E. Russell for Plaintiffs and Appellants.

Keith C. Sorenson, District Attorney, L. M. Summey, Assistant District Attorney, John R. Cosgrove and Jorgenson, Cosgrove & Siegel for Defendants and Respondents.

OPINION

WHITE, P. J.—This appeal is taken from a judgment by the Superior Court of San Mateo County entered after the sustaining of a general demurrer to appellants' fourth cause of action without leave to amend and the granting of motions for summary judgment on appellants' first, second and ninth causes of action. The superior court action was brought pursuant to Code of Civil Procedure section 860 et seq., and Government Code section 35005 to challenge the validity of the annexation without election of a part of San Mateo County known as the "Watkins/El Camino" area to the City of Menlo Park. The annexation was conducted pursuant to the Municipal Reorganization Act of 1977. (Gov. Code, § 35000 et seq., known as MORGA.)[1] Appellants are residents and owners of land in the area.

The statutory scheme contained in MORGA provides that changes of organization or municipal reorganization are to be initiated by proposal by the local governmental legislative body, the county board of supervisors or, as here, the city council.[2] The proposal is submitted to the local agency formation commission (LAFCO) which conducts preliminary proceedings and, after notice and hearing, approves or disapproves the proposal by resolu-

---

[1] All provisions of MORGA cited herein are the provisions in effect at the time of annexation and the filing of the complaint. Government Code section 35150, subdivision (f) (Stats. 1977, ch. 1253, § 9; amended Stats. 1978, ch. 339, § 9) was later amended by Statutes 1981, chapter 855 to eliminate until January 1, 1988, the exception challenged in this action. All statutory citations herein are to the Government Code.

[2] A "change of organization" is defined by the act as "an annexation or detachment of territory to, or from, a city, the disincorporation or consolidation of any city or cities." (§ 35027.) A "municipal reorganization" is defined for the purposes relevant here as "[t]wo or more changes of organization proposed in a single proposal for any single city." (§ 35042.)

tion. After approval by LAFCO, the county board of supervisors initiates the actual annexation proceedings, conducts its own hearing and then either (1) orders the proceedings terminated, (2) orders an election to submit the proposal to the voters, (3) orders the completion of the proposal to the voters, or (4) orders the completion of the proposal without an election. (§§ 35200-35315.) Most proceedings under MORGA include the right of citizens in the affected area to submit written protests and require an election on the annexation or reorganization. However, section 35150, subdivision (f), allows the annexation of territory without an election if the territory, among other characteristics not directly relevant here, "does not exceed 100 acres in area and such area constitutes the entire island" and "is surrounded or substantially surrounded by the city to which annexation is proposed . . ." or "is surrounded by a city and adjacent cities."

The annexation proceedings at issue here were originally commenced in 1978. Although at one time the annexation of the Watkins/El Camino area had been approved, in June of 1979, LAFCO voted to vacate and set aside its previous approval of the annexation. The area originally designated "Watkins/El Camino" was then divided into three pieces. One small piece, "Watkins Avenue," was annexed to the Town of Atherton and another small piece, "Lands of Wistron," to Menlo Park.[3] The area subsequently redesignated as "Watkins/El Camino" was the major part of the original territory. Proceedings were initiated again for annexation to Menlo Park of the new Watkins/El Camino area and annexation was completed December 12, 1980. Appellants' suit challenging the validity of the annexation was filed in February of 1981. Respondents demurred to the fourth cause of action and moved for summary judgment on the first, second, and ninth causes of action. Respondents' general demurrer was sustained without leave to amend and their motions for summary judgment were granted. Thereafter a final judgment was entered validating the annexation. Appellants' timely appeal challenges the sustaining of the demurrer and the granting of the motions for summary judgment.

## I.

Appellants' fourth cause of action makes a constitutional claim grounded in the unequal treatment of residents of territories consisting of fewer than 100 acres vis-á-vis those of territories with more than 100 acres. While the latter enjoy the right to protest and vote in an annexation proceeding (§ 35228), the former are not entitled to any election on the subject.

---

[3] "Watkins Avenue" and "Lands of Wistron" were apparently annexed pursuant to section 35151 and not 35150, subdivision (f).

(§ 35150, subd. (f).) Appellants argue that this unequal treatment requires strict scrutiny because the denial of voting rights touches upon and burdens a fundamental right, and that no compelling interest is served by the classification contained in section 35150, subdivision (f). Appellants maintain they have been prejudiced by the ruling on the demurrer to this cause of action, and argue had the demurrer been overruled and the statute found unconstitutional, the annexation would be invalid.

■ On appeal from a judgment entered on demurrer, the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (*State of California* ex rel. *State Lands Com.* v. *County of Orange* (1982) 134 Cal.App.3d 20, 26 [184 Cal.Rptr. 423].) If there is any reasonable possibility that plaintiff can state a good cause of action, it is error and an abuse of discretion to sustain the demurrer without leave to amend. (*Ibid.*; see also *Temescal Water Co.* v. *Dept. of Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1].) However, leave to amend is properly denied if the facts and nature of plaintiffs' claims are clear and under the substantive law, no liability exists. (*Haskins* v. *San Diego County Dept. of Public Welfare* (1980) 100 Cal.App.3d 961, 964-965 [161 Cal.Rptr. 385]; see also *Routh* v. *Quinn* (1942) 20 Cal.2d 488, 493-494 [127 P.2d 1, 149 A.L.R. 215].)

■ The same challenge appellants make to the constitutionality of Government Code section 35150, subdivision (f) has been raised several times in recent years. (*Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400 [185 Cal.Rptr. 18]; *I.S.L.E.* v. *County of Santa Clara* (1983) 147 Cal.App.3d 72 [194 Cal.Rptr. 854]; *O'Neill* v. *County of San Mateo* (Nov. 15, 1983, 1st Civ. AO-13360 [unpub. opn.]).) It has been uniformly rejected on the basis of *Weber* v. *City Council* (1973) 9 Cal.3d 950 [109 Cal.Rptr. 553, 513 P.2d 601]. The *Scuri* court found, contrary to appellants' contention, that no fundamental right is burdened where none has been provided (134 Cal.App.3d at p. 406) and therefore the proper test is whether the classification bears a rational relation to a legitimate legislative end. (*Ibid.*) The court went on to find that section 35150, subdivision (f), does in fact bear such a relation to the legitimate legislative aim of orderly, efficient and economical formation and determination of city boundaries. We agree with that court's opinion and adopt it here at length.

"In *Weber* v. *City Council* (1973) 9 Cal.3d 950 . . ., the California Supreme Court examined a similar distinction under this same act, where the annexation of uninhabited territory authorized no election, while residents of inhabited territory were entitled to vote. Uninhabited territory was defined in the act as an area where fewer than 12 registered voters resided. (*Weber* v. *City Council, supra,* at p. 958.) The Supreme Court distinguished

other cases, including *Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942 (relied on by appellants here) where classes of persons were excluded from participation in an election provided for by state law. In *Weber,* the issue was not the unconstitutional impairment of individual voting rights, but the right of the Legislature not to have provided for an annexation election under certain circumstances. (*Weber* v. *City Council, supra,* at pp. 960-961.) The *Weber* court concluded (at p. 961): 'As the Legislature could constitutionally have provided that all annexations to cities be accomplished without a vote of the residents of the territory proposed to be annexed, and as the 1939 act provides for annexation without an election, the instant case involves no deprivation of or limitation on the fundamental right to vote calling for close scrutiny or justification on the basis of a compelling state interest.'

"The *Weber* court then evaluated the allegedly arbitrary line drawn between 12 and 13 registered voters on the traditional standard: whether the statute bore some rational relationship to a legitimate state end. The court found in the legislative statement of purpose more than sufficient justification for the distinction, concluding 'The Legislature may reasonably have concluded in such situations that the expense of annexation election procedures [citations] or the governmental interest in avoiding tiny pockets of unincorporated territory outweigh considerations in favor of obtaining a majority vote of the residents. [Citation.]' (*Weber* v. *City Council, supra,* 9 Cal.3d at p. 965.)

"We see no distinction to be drawn between the *Weber* statute, discriminating on the basis of population size, and our statute, discriminating on the basis of territorial size. At issue here, too, is not the disenfranchisement of certain individuals in a particular election, but the decision of the Legislature not to provide for an election at all. That decision will be upheld if it bears any rational relationship to the legislative purpose.

"The legislative purpose behind the municipal organization act is illuminated by section 35000, wherein the Legislature explains what it intends to achieve and the problems sought to be solved by the act. Concerned with the orderly growth and development of communities within the state, the Legislature seeks logical formation and determination of city boundaries. Pertinent to the provisions of section 35150, challenged here, is the legislative finding '. . . that when areas become urbanized to the extent that they need the full range of community services, priorities must be established regarding the type and levels of such services that the residents of an urban community need and desire; that community service priorities be established by weighing the total community service needs against the total financial resources available for securing community services; . . .' (§ 35000.)

"The Legislature may well have concluded that, when confronted with a large number of potential island annexations (beginning in 1979 Ventura County conducted and approved 83 island annexations), substantial fiscal savings could be [e]ffected by not including an election procedure for territories of limited geographical size, already substantially surrounded by the annexing city. The failure to provide for elections in those small communities is sufficiently related to the legitimate legislative purpose of orderly, efficient, and economical formation and determination of city boundaries to satisfy equal protection requirements." (*Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d at pp. 405-406.)

Thus it is apparent that no constitutional claim was, or could be, presented under appellants' cause of action. Accordingly, the demurrer was properly sustained without leave to amend.

## II.

■ Appellants' first cause of action alleges that respondents exceeded their authority in that the annexation of Watkins/El Camino in relation to six other annexations also conducted pursuant to Government Code section 35150, subdivision (f) at the same time constitutes a municipal reorganization, a procedure which requires an election pursuant to sections 35300 through 35315. The six other annexations to Menlo Park were the subject of *O'Neill* v. *County of San Mateo* (1st. Civ. *supra,* [unpub. opn.].) and were also challenged on the ground that the multiple island annexations constituted a municipal reorganization. Appellants' position is that the annexation of Watkins/El Camino was part of the alleged municipal reorganization challenged in *O'Neill,* and they concede that a decision in that case that those six annexations did not constitute a municipal reorganization is dispositive of the question whether Watkins/El Camino was the subject of an invalid municipal reorganization.

On the basis of *Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d 400, we rejected the contention raised by appellants in *O'Neill* and in this case. We quote from *O'Neill*: "Appellants cite several definitions and provisions from MORGA which, if read apart from their context, could support the argument that more than one annexation constitutes a municipal reorganization. ■ However, it is a principle of statutory construction that a statute be interpreted in harmony with the act of which it is part. (See *Rose* v. *State of California* (1942) 19 Cal.2d 713, 723 [123 Cal.Rptr. 505].) ■ As the *Scuri* court pointed out 'Since statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers, courts may consider the consequences that might flow from a particular interpretation, and construe the statute with a

view to promoting rather than defeating its general purpose and the policy behind it [citations].' (134 Cal.App.3d at p. 407.) ▆▆ To require a city or county to hold elections whenever more than one "island" annexation is proposed would defeat the purpose behind creating an exception for such annexations in the first place. Such a construction of MORGA would also defeat in the larger sense the previously stated legislative purpose of efficient, orderly, and logical boundary formation. The multiple island annexations at issue here did not constitute a municipal reorganization within the contemplation of MORGA."

Since the six annexations challenged in *O'Neill* did not constitute a municipal reorganization, the Watkins/El Camino annexation standing alone cannot. No cause of action can be stated as a matter of law, and summary judgment for respondents was proper.

### III.

▆▆ Appellants' ninth cause of action challenges the annexation on the ground that as of January 1, 1978, the territory which was finally annexed as Watkins/El Camino satisfied neither of the two disjunctive criteria set forth in section 35150, subdivision (f) for determining whether a territory is properly subject to "island" annexation.[4] Appellants' argument is based on the fact that the Watkins/El Camino area *as it was finally annexed in December 1980* was bordered *as of January 1978* by Menlo Park (approximately 40 percent), Atherton (approximately 60 percent) and the two parcels designated "Watkins Avenue" and "Lands of Wistron" which had been subdivided from the original Watkins/El Camino territory. As authority for their position, appellants cite section 35014 which states in relevant part: "The authority to initiate, conduct, and complete any proceeding pursuant to Section 35013[5] shall not apply to any territory which, after the effective date of this part, became surrounded or substantially surrounded by the city to which annexation is proposed." Appellants argue that since Menlo Park did not, as of January 1, 1978, surround the Watkins/El Camino

---

[4] 35150. "The commission shall have the powers and duties set forth in Chapter 6.6 . . . including the following: [¶] (f) To approve the annexation after notice and hearing and authorize the conducting authority to order annexation of the territory without an election if the commission finds that the territory contained in an annexation proposal: [¶] (1) Does not exceed 100 acres in area and such area constitutes the entire island; [¶] (2)(A) Is surrounded or substantially surrounded by the city to which annexation is proposed or by such city and a county boundary or the Pacific Ocean; or [¶] (B) Is surrounded by a city and adjacent cities; [¶] (3) Is substantially developed or developing; [¶] (4) Is not prime agricultural land as defined in Section 35046; and [¶] (5) Will benefit from such annexation or is receiving benefits from the annexing city."

[5] 35013. "If authorized by the commission pursuant to subdivision (f) of Section 35150, the conducting authority, unless it terminates the proceedings as provided by Section 35224.5, shall order the annexation of the territory without an election."

area by itself[6] nor was the area as annexed surrounded by Menlo Park and an adjacent city as of January 1, 1978, the annexation was invalid as against section 35014.

We agree that section 35014 requires that the criteria of subdivision (f) of section 35150 regarding the "surrounded or substantially surrounded" requirement be satisfied as of January 1, 1978. ■ The purpose of section 35014 is to prevent formerly exempt territory from becoming subject to annexation because of boundary changes. (63 Ops.Cal.Att.Gen. 343 (1980)) ■ However, that purpose is not invoked by these circumstances nor can it be said the requirement was not satisfied. The Watkins/El Camino territory as annexed was part of the original Watkins/El Camino area which itself was properly subject to annexation prior to January 1, 1978. At that time the area was completely surrounded by Menlo Park and Atherton and comprised less than 100 acres. It would be incongruous and contrary to the liberal interpretation policy expressed in section 35006 to hold that while the whole was subject to annexation, subdivision (f) rendered its parts exempt. Although, technically speaking, at the time annexation was proposed to LAFCO, the reduced Watkins/El Camino area was surrounded by Menlo Park, Atherton, and the two unincorporated parcels of San Mateo County. Watkins Avenue and the Lands of Wistron, by the time LAFCO authorized the annexation of the two smaller parcels, had been completed, making them part of adjacent Atherton and Menlo Park, respectively.[7] Thus at all relevant times, the requirements of section 35014 and 35150, subdivision (f) were satisfied. That being so, no cause of action could be presented under appellants' ninth cause of action, and summary judgment in favor of respondents was proper.

## IV.

Appellants' second cause of action is similar to their ninth in that it challenges the annexation on the ground that the Watkins/El Camino area as finally annexed did not constitute the "entire island" as it existed prior to January 1, 1978, because it did not include the Watkins Avenue and Lands of Wistron parcels. Appellants again cite section 35014 in support of their position.

---

[6]Respondents admit that Menlo Park did not surround or substantially surround the area. The issue presented is whether the area was surrounded by Menlo Park "and adjacent cities."

[7]Annexation of the Lands of Wistron was completed on August 21, 1980. Annexation of Watkins Avenue was completed October 1, 1980. Menlo Park initiated proceedings for Watkins/El Camino on August 19, 1980 and LAFCO issued its authorization October 24, 1980. Annexation of Watkins/El Camino was completed on December 12, 1980.

■ This argument is without merit because section 35014 contains no requirement that an island annexation be of an entire island as it existed prior to January 1, 1978. If the entire island was subject to annexation prior to January 1, 1978, its subdivided parts are subject to annexation so long as that subdivision is surrounded or substantially surrounded either by the annexing city alone or by the annexing city and an adjacent city. To hold otherwise would be to restrict LAFCO to ordering that the entire island be annexed to Menlo Park when it seemed to the commission that it would be better for Watkins Avenue to be part of Atherton. This would run contrary to the above-stated governmental interest in the orderly, efficient, and economical formation and determination of city boundaries and cannot be indorsed. LAFCO should, and does, have the discretion to determine that portions of an island already properly subject to island annexation be annexed to different cities. Accordingly, no cause of action could be presented under appellants' second cause of action and summary judgment in favor of respondents was proper.

Scott, J., and Feinberg, J., concurred.