[No. F001613. Fifth Dist. Nov. 30, 1984.]

FIG GARDEN PARK NO. 2 ASSOCIATION et al.,
Plaintiffs and Respondents, v.
LOCAL AGENCY FORMATION COMMISSION OF FRESNO
COUNTY et al., Defendants and Appellants;
CITY OF FRESNO, Intervener and Appellant.

338

**COUNSEL**

Floyd R. B. Viau, County Counsel, and Thomas J. Riggs, Chief Deputy County Counsel, for Defendants and Appellants.

James A. McKelvey, City Attorney, and C. William Brewer, Assistant City Attorney, for Intervener and Appellant.

Andrews, Andrews, Thaxter & Jones and James F. Thaxter for Plaintiffs and Respondents.

**OPINION**

BROWN (G. A.), P. J.—The City of Fresno (City), the County of Fresno (County) and Local Agency Formation Commission of the County of Fresno (LAFCO) appeal from a judgment invalidating the annexation to the City of Fresno of an occupied unincorporated area, designated Shaw-West No. 2 Annexation, without an election. The suit to invalidate the annexation was commenced by residents of the area under the name of Fig Garden Park No. 2 Association (Association) and the North Central Fire Protection District, a special district, from which district the annexed area was concurrently detached. The suit is authorized by Government Code section 35005 and Code of Civil Procedure section 860.

The facts are stipulated. The area to be annexed consists of 77 developed acres, bordered generally by Shaw Avenue on the north, Teilman Avenue on the east, Gettysburg Avenue on the south, and West Avenue on the west. (See attached diagram.) Shaw Avenue is a main east-west business thoroughfare. Except for businesses, condominiums and apartments along Shaw Avenue, the balance of the area consists of single family dwellings.

It is comprised of approximately 156 developed lots, and there are approximately 269 registered voters in the area.

The entire area was at all times pertinent[1] surrounded by the City with the exception of a gap along Shaw Avenue at the northeast corner approximately 230 feet in length. The total perimeter of Shaw-West No. 2 is approximately 8,000 feet. Thus, the distance represented by the 230-foot gap constitutes approximately 3 percent of the total perimeter. The property north of the gap was county property extending for miles.

The entire area surrounding Shaw-West No. 2 was a fully developed residential area.

The annexation was conducted under the provisions of Government Code section 35000 et seq.,[2] the Municipal Organization Act of 1977 (MORGA). The act sets forth the procedures for the incorporation of cities, annexations, detachments, and other municipal boundary changes. The statutory scheme of MORGA is that changes of municipal organizations constituting annexations are to be initiated by a proposal by the local governmental legislative body desiring to annex. The proposal is submitted to LAFCO, which conducts preliminary proceedings and, after notice and hearing, approves or disapproves the proposal by resolution. After approval by LAFCO, the county board of supervisors initiates the actual annexation proceedings, conducts its own hearing, and then either (1) orders the proceedings terminated, (2) orders an election to submit the proposal to the voters, or (3) orders the completion of the proposal without an election. (§§ 35200-35315.) Most of the proceedings under MORGA include the right of citizens in the affected area to submit written protests, requiring an election on the annexation or reorganization. However, Government Code section 35150, subdivision (f), allows the annexation of territory without an election if the conditions of that section are met.

Section 35150, subdivision (f),[3] and allied sections, are commonly known as the island annexation provisions of MORGA. At the times relevant, section 35150, subdivision (f), stated in pertinent part: "The commission shall have the powers and duties set forth in Chapter 6.6 (commencing with Section 54773) of Part 1, Division 2, Title 5, and such additional powers and duties as are specified in this part, including the following:

---

[1]The 7.9 acres shown on the attached diagram as "Shaw-Teilman #4 Reorganization" was annexed subsequent to the events herein.

[2]All references will be to the Government Code unless otherwise indicated.

[3]This exception was repealed by the statute's own terms on January 1, 1981. The law was reenacted in 1983 with significant revisions. (Stats. 1983, ch. 298, § 3.)

"............................

"(f) To approve the annexation after notice and hearing, and authorize the conducting authority to order annexation of the territory without an election if the commission finds that the territory contained in an annexation proposal:

"(1) Does not exceed 100 acres in area and such area constitutes the entire island;

"(2) (A) Is surrounded or substantially surrounded by the city to which annexation is proposed or by such city and a county boundary or the Pacific Ocean; or [¶] (B) Is surrounded by a city and adjacent cities;

"(3) Is substantially developed or developing;

"(4) Is not prime agricultural land as defined in Section 35046; and

"(5) Will benefit from such annexation or is receiving benefits from the annexing city."

LAFCO found the territory "1. Does not exceed 100 acres in area and such territory constitutes the entire unincorporated island of territory; [and] 2. [i]s substantially surrounded by the City of Fresno, which is proposing the annexation; . . ."

The trial court found the annexation to be invalid because the property being annexed did not constitute the entire island and because the annexation, when considered in conjunction with the Shaw-Teilman No. 4 Annexation, constituted a municipal reorganization (§ 35042), which always requires an election. We disagree and will uphold the annexation.

### DISCUSSION

 The trial court concluded that Shaw-West did not constitute the entire island and exceeded 100 acres in area because the 230-foot gap at the northeast corner of the area made all the county property north of the gap part of the island. This interpretation renders the term "substantially surrounded" meaningless and surplusage. If the entire island concept is determinative and is met, the area will always be substantially surrounded. We think it more consistent with the legislative purpose as expressed in the statute and with the rules of construction and precedent to interpret the statute so as to give effect to both the terms "substantially surrounded" and

"entire island." ■ The provisions of a statute should be construed in context and harmonized whenever possible, and rendering some words surplusage is to be avoided. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

■ A cardinal rule in interpreting a statute is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Here the statute itself expresses the legislative purpose and decrees that the statute "shall be liberally construed to effectuate its purposes." (§ 35006.)[4]

■ Section 35000 clearly expresses the legislative intent to promote orderly development of urban areas and logical formation and expansion of cities to assure that persons living in enclosures within a city shall pay their share for services provided by the city and that a "single governmental agency, rather than several limited purpose agencies, is better able to assess and be accountable for community service needs and financial resources and, therefore, is the best mechanism for establishing community service priorities."

Thus there is a strong governmental interest in avoiding pockets of unincorporated territory. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 965 [109 Cal.Rptr. 553, 513 P.2d 601].) ■ Canons of statutory construction require that a statute be interpreted in harmony with the act of which it is a part. (See *Rose* v. *State of California* (1942) 19 Cal.2d 713, 723 [123 P.2d 505].) ■ As stated in *Kahn* v. *Kahn* (1977) 68 Cal.App.3d 372, 381 [137 Cal.Rptr. 332]: "Since statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers, courts may consider the consequences that might flow from a particular interpretation, and construe the statute with a view to promoting rather than defeating its general purpose and the policy behind it. [Citation.]"

We approach the statute with these principles in mind and with the purpose of reconciling and harmonizing the two terms "entire island" and "substantially surrounded" area in an effort to give effect and meaning to

---

[4]Section 35006 provides: "This part shall be liberally construed to effectuate its purposes. No city incorporation, municipal reorganization or change of organization ordered under this part shall be invalidated by any defect, error, irregularity, or omission in any act, determination or procedure which does not adversely and substantially affect the right of any person, city, county, district, the state or any agency or subdivision of the state. All determinations made by a commission or by any legislative body under and pursuant to the provisions of this part shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion."

both, consistent with the general legislative purpose. ■ We have concluded that if the area does not exceed 100 acres and is substantially surrounded by a city (or by the city and county boundary or the Pacific Ocean or by the city and adjacent cities), the area qualifies for annexation under the island annexation act.[5]

The entire island concept was introduced into the statute to prevent piecemeal annexation of large surrounded or substantially surrounded areas, thus prohibiting the circumvention of the 100-acre limitation and/or the annexation of smaller areas within larger substantially surrounded areas. In other words, in initially determining the existence and perimeters of an island, the determining factor is whether it is surrounded or substantially surrounded. If it is, that fixes the dimension and existence of the island. The second requirement is that the annexation include the entire island which is surrounded or substantially surrounded territory. An example may be helpful.

Thus, in the above example the outer perimeter of the 200-acre unincorporated parcel is substantially surrounded by the city. If the parcel were 100 acres or less, it would be eligible for a section 35150, subdivision (f), annexation. Since it is not 100 acres or less, it is not eligible. The concept would be violated if the City attempted to break up the 200 acres into smaller parcels 100 acres or less, thus otherwise qualifying the individual parcels for annexation within the 100-acre limitation. Such a procedure would tend to circumvent the 100-acre limitation and the "entire island" concept would prohibit it. (See *Meyers* v. *Local Agency Formation Com.* (1973) 34 Cal.App.3d 955, 964 [110 Cal.Rptr. 422]; *City of Anaheim* v. *City of Fullerton* (1951) 102 Cal.App.2d 395 [227 P.2d 494]; 63 Ops. Cal.Atty.Gen. 343 (1980).)

---

[5]We, of course, assume that the other requirements of section 35150, subdivision (f), are met as in this case.

This interpretation not only gives effect to both terms and to the legislative intent, but is consistent with case law. Thus, in *Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400 [185 Cal.Rptr. 18], there were three[6] parcels being annexed, two by the City of Ventura and one by the City of Oxnard. The Oxnard parcel was 79.8 percent surrounded by the city, and the two Ventura parcels were 89.13 percent and 82.4 percent surrounded by the city. The landowners argued that the parcels did not constitute the "entire island" to be annexed. As described by the court: "Although the term 'entire island' is not defined anywhere in the act, it is their position that it must be a piece of property, fewer than 100 acres in area, surrounded entirely by the city, or by a city and county, the city and the ocean, or a city and adjacent cities. Since the subject properties were not so surrounded, it is appellants' position that in January 1978, the properties consisted of the area now under consideration, plus all of the contiguous agricultural land, . . ." (*Id.,* at p. 408.)

In rejecting this argument, the court said: "[W]e do not agree that the subject properties were not eligible for island annexation on January 1, 1978. Subdivision (f) of section 35150 requires that the island be surrounded or 'substantially surrounded' by the annexing city on that date." (*Id.,* at p. 409.)

*Schaeffer* v. *County of Santa Clara* (1984) 155 Cal.App.3d 901 [202 Cal.Rptr. 515] is strongly supportive of our position. In that case, entirely surrounded by the City of San Jose was an irregular-shaped unincorporated 600-acre tract of land. As described by the court: "Within, and part of, the 600-acre Cambrian Park *island* was a 19.73-acre parcel of land improved as a retail shopping center, known as Cambrian Park Plaza, and owned by the plaintiff, Schaeffer. The 19.73-acre Cambrian Park Plaza was located on the perimeter of the 600-acre Cambrian Park, and 68 percent of its boundary was coterminous with that of the City of San Jose. It was that 19.73-acre parcel only, *not* the remainder of the island which was sought to be annexed by the City of San Jose under the authority of Government Code section 35150." (*Id.,* at pp. 903-904.)

The owner of the 19.73-acre parcel successfully set aside the annexation proceedings. The court assumed, without deciding, that the 19.73-acre parcel was substantially surrounded by the city—68 percent of its perimeter—but then invalidated the proceedings because the 19.73-acre parcel did not constitute the "entire island." The court stated: "Assuming, but only ar-

---

[6]There were four parcels, but one of the parcels is not relevant to the issue now being discussed.

guendo that it must [be substantially surrounded], we become confronted with the statutory insistence (subd. (f)(1)) *that the area to be annexed shall constitute 'the entire island.'* Here the area proposed to be annexed, the 19.73-acre Cambrian Park Plaza, was but *a part* of the 600-acre Cambrian Park island surrounded entirely by the City of San Jose. The smaller area was thus *not* subject to annexation, over plaintiff's protest, *without an election* under Government Code sections 35150 and 35224.5.

"We are unpersuaded by defendants' argument that the 19.73-acre Cambrian Park Plaza may, and should, be treated as an island within the larger 600-acre island of Cambrian Park. Doing so, we think, would defeat the statutory purpose that only 'entire islands' within a city's confines be annexed. And it would visit violence upon another of the statute's dictates, i.e., that the total area to be annexed *'not exceed 100 acres.'* For if *part* of an otherwise forbidden larger island might be so annexed, that proceeding could be followed by other such proceedings, and yet others, until an entire 600 acres such as Cambrian Park be so consumed, contrary to the clear legislative purpose that areas more than 100 acres in size *not* be annexed under section 35150." (*Id.,* at p. 905.)

The Association relies upon an opinion of the Attorney General dated April 25, 1980 (63 Ops.Cal.Atty.Gen.343). We believe that reliance is misplaced, and in fact the opinion is supportive of the result we reach. The question posed was whether the standards of section 35150, subdivision (f), were met "if the territory contained in the annexation proposal is less than 100 acres but constitutes a part of an incorporated area which is more than 100 acres in area."

The Attorney General concluded that the Legislature did not intend to allow piecemeal annexation by taking 99 acres at a time of a much larger territory. The opinion correctly observes: "It would be unreasonable to conclude that the statute's 100 acre limitation is without significant meaning. If a proposed area of annexation could constitute a portion of a larger territory, the 100 acre limitation could be easily circumvented by separate annexation proceedings. We do not believe that the Legislature intended piecemeal annexation as a means to thwart citizen participation in the decision making process." (63 Ops.Cal.Atty.Gen., 343, 345.)

The Attorney General also recognized that the key question is what is the island and recognized that that issue is properly determined by the test of being "substantially surrounded," observing: "Requiring, therefore, that the proposed area of annexation constitute an 'entire' island gives meaning to the 100 acre limitation, and each statutory provision supports the other.

Simply put, by using the words 'entire island,' the Legislature precluded the annexation of a *part of* an island under this statutory provision.

"The reference to 'substantially surrounded' by the city or city and county boundary or city and Pacific Ocean in subdivision (f) does not alter our conclusion. The proposed territory can still be an 'island' although only 'substantially' surrounded by the annexing city and, for example, a county boundary, where another city is adjacent to the territory." (*Ibid.*; fn. omitted.)

The Association argued, and the trial court adopted, the principle that section 35150, subdivision (f), must be narrowly construed, relying upon the principle of interpretation that the island annexation provision of MORGA allowing annexation without a vote is an exception to the general provisions requiring an election and contravenes public policy favoring citizen participation in determining the unit of their legal governance. We believe that the strong public policy expressed in section 35000 and the legislative injunction to liberally construe the statute (§ 35006) and the other applicable principles of interpretation we have relied upon govern this case and combine to render the principle of narrow construction of little importance.

■ Applying the facts in the case at bar, it is clear that the area of Shaw-West Annexation No. 2 was substantially surrounded by the City, 98 percent of its perimeter being part of the City. The Association concedes that the Shaw-West Annexation No. 2 is substantially surrounded. That area was determined by LAFCO and the annexing agencies to be the entire island eligible for annexation without a vote, notwithstanding the 230-foot gap existing at the northeast corner along Shaw Avenue. The annexation proceedings covered this entire island, which was less than 100 acres. Accordingly, the trial court erred in concluding that the property did not qualify for annexation under section 35150, subdivision (f).

■ The trial court also held the Shaw-West Annexation No. 2 was part of a municipal reorganization, subject to the protest and election requirements of MORGA.

At the time of the reorganization section 35042 defined a municipal reorganization as: "(a) One or more change of organization of a city proposed for each of two or more cities, and may include the incorporation of a new city; or

"(b) Two or more changes of organization proposed for any single city."

"Change of organization" includes an annexation (§ 35027). Thus, two annexations by one city can be a municipal reorganization.

The resolution for the annexation of Shaw-West Annexation No. 2 was adopted by the board of supervisors on December 15, 1980. The Shaw-Teilman No. 4 Annexation, pursuant to a district reorganization, was adopted by the City on the next day, December 16, 1980. It is conceded that if annexation of Shaw-West No. 2 and Shaw-Teilman No. 4 was a municipal reorganization, the protest and voting requirements for a municipal reorganization would have to be complied with.

In holding there was a municipal reorganization, the trial court relied upon two facts. (1) The fact the annexations were consummated so close together, and (2) the contiguity between parts of the two areas. Nothing else appears in the record before us to indicate that the two proceedings were undertaken to evade the island annexation law. The resolutions initiating the proceedings were at different times. The Shaw-West resolution requesting the proceedings to be undertaken was adopted on April 22, 1980. The Shaw-Teilman No. 4 resolution was adopted on June 10, 1980.

It appears, however, that had the events been a planned evasion of the Island Annexation Act the City would have annexed Shaw-Teilman No. 4 first, thereby closing the gap between at the northwest corner of Shaw-West No. 2 and eliminating the controversy over whether Shaw-West No. 2 constituted the entire island.

From the standpoint of the City, we see nothing that the City would have gained by having the Shaw-Teilman annexation before or after the Shaw-West annexation. Accordingly, adding the facts of contiguity to the nearly simultaneous annexations on the facts of this case, it does not seem to add anything to a determination of whether there was a municipal reorganization.

From all that appears in the record before us, the two proceedings were processed independently of each other, there being no cross-references to the other proceedings in any of the documents, resolutions, etc., before us.

Courts have rejected similar contentions in other cases. Thus, in *Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d 400, there were four separate parcels simultaneously annexed in the same proceedings to two different cities. In rejecting the contention, the court said: "Appellants cite no authority for this novel proposition, but rather select several definitions from the act which, read together and out of context, could support the argument

that more than one annexation constitutes a municipal reorganization. However, that interpretation of the statute would render virtually meaningless many of the provisions in the act, including section 35150. To conclude that whenever more than one annexation to a city is proposed it becomes by definition a municipal reorganization would defeat the previously stated legislative purpose of efficient, orderly, and logical boundary formations." (*Id.*, at pp. 406-407.)

In *I.S.L.E.* v. *County of Santa Clara* (1983) 147 Cal.App.3d 72 [194 Cal.Rptr. 854], there were 16 simultaneous annexations to the city. Relying on *Scuri*, the court rejected the contention that this was a municipal reorganization, stating: "The *Scuri* court apparently did not consider the timing of the annexations important and neither do we." (*Id.*, at p. 76; fn. omitted.)

A similar contention was rejected in *Beck* v. *County of San Mateo* (1984) 154 Cal.App.3d 374, 381-382 [201 Cal.Rptr. 365].

We regard these cases as determinative of the issue, which must be resolved against the contention of the Association.

■ In the trial court the Association argued that the island annexation provision of MORGA violated the equal protection clauses of the state and federal Constitutions. The trial court rejected the contention, holding the island annexation provision did not violate equal protection. On this appeal, appellants reassert their argument that the trial court was correct in holding equal protection was not implicated. The Association has not replied to that contention and has apparently abandoned the argument on appeal. Assuming it has not, however, the argument has no merit, having been definitively decided by a number of cases that the island annexation provisions do not violate equal protection. (See *Scuri* v. *Board of Supervisors, supra,* 134 Cal.App.3d 400, 406; *I.S.L.E.* v. *County of Santa Clara, supra,* 147 Cal.App.3d 72, 79-80; *Beck* v. *County of San Mateo, supra,* 154 Cal.App.3d 374, 380-381; *Weber* v. *City Council, supra,* 9 Cal.3d 950, 961-965.)

The judgment is reversed; each party shall bear its/his/her own costs on appeal.

Andreen, J., and Woolpert, J., concurred.